ACCEPTED
01-15-00406-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/8/2015 4:11:38 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00406-CV

In The

### FIRST COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/8/2015 4:11:38 PM

CHRISTOPHER A. PRINE
Clerk

At Houston, Texas

_____

## NEW HAMPSHIRE INSURANCE COMPANY,

Appellant,

## V.

## CANDIS MORA, et al,

Appellees.

_____

Appealed from the 165th District Court of
Harris County, Texas

_____

## APPELLANT'S BRIEF

_____

Loren R. Smith
State Bar No. 18643800
Kelly & Smith, P.C.
4305 Yoakum Blvd.
Houston, Texas 77006
Tel.:  (713) 861-9900
Fax:  (713) 861-7100

## ORAL ARGUMENT REQUESTED

NO. 01-15-00406-CV

NEW HAMPSHIRE INSURANCE COMPANY,

Appellant,

V.

CANDIS MORA, et al,

Appellees.

_____

**IDENTITY OF PARTIES & COUNSEL**
_____

1. New Hampshire Insurance Company – Appellant

2. Loren R. Smith – Counsel for Appellant
   State Bar No. 18643800
   Kelly & Smith, P.C.
   4305 Yoakum Blvd.
   Houston, Texas  77006
   (713) 861-9900 - Telephone
   (713) 861-7100 - Facsimile
   lsmith@ksmpc.com

3. Candis Mora, Individually and as Next Friend of Anthony Lorenzo Dean Mora, Emma Elisha Mora, and Francisco John Mora, Minor Children, and as Personal Representative of and Heir to the Estate of Anthony Bryan Mora, Deceased – Appellees

4. Peter M. Kelly – Counsel for Appellees
   State Bar No. 00791011
   Kelly, Durham & Pittard, L.L.P.
   1005 Heights Boulevard
   Houston, Texas 77008
   (713) 529-0048 - Telephone
   (713) 529-2498 – Facsimile
   pkelly@texasappeals.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL......................................................................ii

TABLE OF CONTENTS .....................................................................................iii

INDEX OF AUTHORITIES ................................................................................. v

STATEMENT OF THE CASE ..........................................................................viii

ISSUES PRESENTED FOR REVIEW ...............................................................ix

STATEMENT OF FACTS ................................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................... 4

ARGUMENT...................................................................................................... 6

ISSUE 1:............................................................................................................ 6

> The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only pertain to general liability insurance coverage that the parties were required to secure for their indemnity obligations.

ISSUE 2:.......................................................................................................... 12

> The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as Trinidad did not assume the liabilities of the defendants for this accident.

ISSUE 3:.......................................................................................................... 25

> The trial court erred in holding that NHIC waived its rights of subrogation against the non-Laredo defendants, as any possible waiver of subrogation as to worker's compensation benefits is limited to claims against Laredo.

PRAYER FOR RELIEF .................................................................................... 28

CERTIFICATE OF SERVICE .......................................................................... 29

CERTIFICATE OF COMPLIANCE AND WORD COUNT ........................................ 29

APPENDIX..................................................................................................................... 30

# INDEX OF AUTHORITIES

**Cases**

*Approach Operating, LLC v. Resolution Oversight Corp.,* 2012 Tex. App. LEXIS 5437, at 7 (Tex. App. Austin July 3, 2012, no pet) ................................................... 7, 8

*Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex. 1988) ............................................. 10

*Ayres Welding Co., Inc. v. Conoco, Inc.,* 243 S.W.3d 177, 181 (Tex. App.-- Houston [14th Dist.] 2007, pet. denied) ..................................................................... 21

*Banner Sign & Barricade, Inc. v. Berry GP, Inc.,* 2008 Tex. App. LEXIS 7120, 20- 21 (Tex. App. Corpus Christi Sept. 25, 2008, pet. den'd) ......................................... 25

*Chevron U.S.A. v. Cigna, No. 09-97-00032-CV, 1998 Tex. App. LEXIS 5043, 1998 WL 472501, at \*3-4 (Tex. App.--Beaumont Aug. 13, 1998, pet. denied)* ...................... 7

*Coastal Mart Inc. v. Southwestern Bell Telephone Co.,* 154 S.W.3d 839, 852 (Tex. App.--Corpus Christi 2005, Castillo, J. concurring, pet. granted, judgm't vacated w.r.m.) ........................................................................................................ 26

*Deepwater Horizon,* 2015 Tex. LEXIS 141 (Tex. 2015)(emphasis added) ......................... 14

*Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993). ................. 26

*Hanks v. GAB Bus. Serv.*, 644 S.W.2d 707, 708, 26 Tex. Sup. Ct. J. 169 (Tex. 1982) ........ 25

*Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex. App.--Tyler 1992, no writ) ....................................................................... 25, 26

*Ken Petroleum Corp. v. Questor Drilling Corp.,* 24 S.W.3d 344, 355 (Tex. 2000) ....... 7, 8, 9

*Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012) ....................................................................................... 17

*Reliance Ins. Co., et al v. Hibdon,* 333 S.W.3d 364 (Tex.App.-Houston [14th Dist], pet. den'd) .................................................................. 27

*Sonerra Res. Corp. v. Helmerich & Payne Int'l Drilling Co.,* 2012 Tex. App. LEXIS 7730 (Tex. App. Houston 1st Dist. Aug. 30, 2012, pet. den'd) ...................... 18

*Tesoro Petroleum Corp. v. Nabors Drilling United States*, 106 S.W.3d 118, 127
(Tex. App.-Houston[1st Dist.] 2002, writ den'd) ........................................ 25

*Texas Mutual Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 38-39 (Tex. 2008) ........................... 4, 8

*Valence Operating Co., 164 S.W.3d at 662* ............................................................ 21

**Statutes and Restatements**

28 TEX. ADMIN. CODE § 21.202 (5) (West 2015) ......................................................... 10

28 TEX. ADMIN. CODE § 21.202 (8) (West 2015 ......................................................... 10

Labor Code § 417.002(b) ......................................................................................... 3

Tex. Labor Code § 408.182 ....................................................................................... 1

Tex. Rule of Civ. Proc. 94 ...................................................................................... 26

NO. 01-15-00406-CV

NEW HAMPSHIRE INSURANCE COMPANY,

                                                                    Appellant,

V.

CANDIS MORA, et al,

                                                                    Appellees.

_____

APPELLANT'S BRIEF
_____

TO THE HONORABLE COURT OF APPEALS OF THE FIRST SUPREME JUDICIAL DISTRICT:

Appellant, New Hampshire Insurance Company ("NHIC"), submits this brief in appeal of the lower court's order and judgment rendered in favor of Appellees, CANDIS MORA, Individually and as Next Friend of ANTHONY LORENZO DEAN MORA, EMMA ELISHA MORA, and FRANCISCO JOHN MORA, MINOR CHILDREN, and as Personal Representative of and Heir to the Estate of ANTHONY BRYAN MORA, DECEASED (collectively referred to as "the Moras"). This appeal is from the 165th District Court of Harris County, Texas, Cause No. 2011-47304, Hon. Elizabeth Ray presiding, in which the Moras were the Plaintiffs, and NHIC was the Intervenor.

## STATEMENT OF THE CASE

The Moras filed suit against multiple defendants in a case assigned to the 165th District Court of Harris County. The claims were for damages recoverable under the Texas Wrongful Death Act arising out the death of Anthony Bryan Mora on February 27, 2011, in an oilfield accident at Rig 204 at a wellsite operated by Laredo Petroleum. NHIC was the worker's compensation carrier for the employer of Anthony Bryan Mora, Trinidad Drilling. As he was killed in the course and scope of his employment with Trinidad, NHIC has paid and continues to pay workers' compensation death benefits to or on behalf of the Moras. NHIC intervened into the Moras' lawsuit, pleading a subrogation claim to recover reimbursement of the amount of benefits paid at the time of final judgment, and seeking a credit against future benefits.

Shortly before settling their claims with all Defendants, the Moras and certain defendants filed a motion for summary judgment against NHIC, contending that it had waived its right of subrogation. NHIC filed a response and replies to the motion and the Moras' replies. The motion was set on the Court's submission docket for October 6, 2014. In October 2014, the Moras reached a global settlement with all defendants.

On February 13, 2015, the trial court entered summary judgment in favor of the Moras and against NHIC on its subrogation claims. A minor settlement hearing was held on February 23, 2015, at which time the trial court accepted the settlement.

On April 24, 2015, NHIC timely filed its notice of appeal. NHIC appeals the trial court's summary judgment entered in this case on February 13, 2015 in favor of the Movants,

made final by the Final Order of Dismissal of All Claims of April 15, 2015 and the Agreed Final Judgment and Approval of Minor Settlement of April 20, 2015. NHIC seeks an order from this Court reversing the trial court's summary judgment that NHIC take nothing on its subrogation claims, and remanding the case to the trial court for a new trial on NHIC's claims.

## ISSUES PRESENTED FOR REVIEW

**ISSUE 1:**

The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only pertain to general liability insurance coverage that the parties were required to secure for their indemnity obligations.

**ISSUE 2:**

The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as Trinidad did not assume the liabilities of the defendants for this accident.

**ISSUE 3:**

The trial court erred in holding that NHIC waived its rights of subrogation against the non-Laredo defendants, as any possible waiver of subrogation as to worker's compensation benefits is limited to claims against Laredo.

**STATEMENT OF FACTS**

Legend: "CR" denotes Clerk's Record; "RR" denotes the Reporter's Record.

On February 7, 2011, Anthony Brian Mora was electrocuted and killed in an oilfield accident on Trinidad Rig 204, while in the course and scope of his employment with Trinidad Drilling, LP. CR.449 The Moras alleged the electrocution occurred as a direct result of a defect in a power cord to a Gormann-Rupp electric transfer pump being operated by Mr. Mora at the time of his death. CR.29,187 Pursuant to a policy of insurance with his employer, NHIC was called upon to pay workers' compensation death benefits to Mr. Mora's widow, Candis Mora, and three children, Anthony Lorenzo Dean Mora, Emma Elisha Mora, and Francisco John Mora. CR.449 As of September 8, 2014, the total amount of benefits paid by NHIC was $143,242.00. *Id.* These benefits are currently being paid weekly in the ratio of 50% to the widow, and 50% to the children. *Id.*

Trinidad was the drilling contractor on the rig, and Laredo was the "operator" of the well and owned, possessed and controlled the premises on which the incident occurred. CR.28 Plaster & Wald was the drilling consultant responsible for supervision, management, and progress of work at the wellsite. *Id.* Laredo leased the subject Gormann-Rupp electric transfer pump and component parts from Lighthouse for use by Trinidad at the well site. CR.28,187 This is the transfer pump which the Moras alleged electrocuted and killed Mr. Mora. CR.29,54-56 The power cord to the pump was damaged, and the Moras alleged Mr. Mora as killed when his left index finger came into contact with a cut on the power cord,

1

while standing on a wet and muddy job site. [1] CR.55

On August 10, 2011, the Moras filed suit against multiple defendants, alleging wrongful death and survival claims related to the death of Anthony Bryan Mora. CR.4 On May 12, 2014, NHIC filed its petition in intervention. CR.71 On September 8, 2014, the Moras and certain defendants filed a motion for summary judgment pertaining to NHIC's subrogation claims. CR.125 They also filed a notice of submission, placing the motion on the trial court's submission docket for October 6, 2014. CR.190 On September 29, 2014, NHIC filed its response to the motion for summary judgment. CR.356

In October 2014, while the summary judgment motion was pending, the Moras reached a settlement with the defendants in a confidential amount. On February 13, 2015, the trial court entered summary judgment in favor of the Moras and against NHIC on its subrogation claims. CR.447 A minor settlement hearing was held on February 23, 2015, at which time the trial court accepted the settlement. RR.31

On February 27, 2015, the trial court signed a stipulation agreed to by the Moras and NHIC. CR.449-53 Terms of the stipulation included:

> 2. Plaintiffs and Plaintiffs' counsel agree to escrow the sum of $250,000 out of the settlement to cover the anticipated amount of past and future death benefits to be paid by NHIC during the pendency of an appeal of this case. The funds will be escrowed in Plaintiffs' counsel's IOLTA account, and shall remain there and not be distributed until there is a final adjudication pertaining to all claims between Plaintiffs and NHIC pertaining to NHIC's alleged right of subrogation and alleged right of a future credit, and all appeals have been exhausted; or until a final agreement is

---

[1] *See also* Ex.F, para.18 and Ex.J, p.4 of *Plaintiff's Objection and Response to Trinidad's No Evidence Motion for Summary Judgment,* filed May 2, 2014. This was requested to be part of the record but omitted by the trial court clerk; a supplemental record has been requested and will soon be filed.

reached between Plaintiffs and NHIC pertaining to NHIC's alleged right of subrogation and right of a future credit. At that time, the funds will be distributed in accordance with the final determination, or in the event of an agreement, in accordance with the agreement of Plaintiffs and NHIC. As to the remaining settlement funds, these funds can be distributed to Plaintiffs and their counsel immediately after Court approval of the settlement and funding by the Defendants.

3. NHIC agrees to not suspend benefits to Plaintiffs for any claimed right of a statutory credit under Tex. Labor Code § 417.002(b) or pertaining to Plaintiffs' settlement with Defendants until there is a final adjudication, for which all appeals have been exhausted, or a written agreement between Plaintiffs and NHIC, that NHIC has a right of a statutory credit under Tex. Labor Code § 417.002(b) pertaining to Plaintiffs' recovery. If there is a final adjudication, for which all appeals have been exhausted, or a written agreement between Plaintiffs and NHIC, that NHIC has a subrogation interest in Plaintiffs' recovery from Defendants, the amount of NHIC's subrogation interest for past benefits paid (subject to claims for attorney's fees and expenses) will be the total amount of benefits paid up and until the date benefits are suspended.

. . . .

5. Of the gross amount of the settlement to be paid collectively on behalf of Defendants Laredo Petroleum, Inc.; Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions; Plaster & Wald Consulting Corp.; Airgen & Equipment Repair; Airgen Equipment, LLC and Roger Simmons d/b/a Rig Maintenance Service, Plaintiffs and NHIC stipulate that four and 16/100ths percent (4.16%) of the gross amount of the settlement is being paid to settle the liability of Laredo Petroleum, Inc.

6. Of the gross amount of the settlement to be paid collectively on behalf of Defendants Laredo Petroleum, Inc.; Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions; Plaster & Wald Consulting Corp.; Airgen & Equipment Repair; Airgen Equipment, LLC and Roger Simmons d/b/a Rig Maintenance Service, Plaintiffs and NHIC stipulate that 92% of the gross amount of the settlement is apportioned to the claims of the Plaintiffs who are receiving worker's compensation death benefits; namely, Candis Mora, Anthony Lorenzo Dean Mora, Emma Elisha Mora, and Francisco John Mora. The remaining 8% of the gross amount of the settlement is apportioned to the claims of Anthony Mora's mother, Elvia Ochoa Garza, who is a non-beneficiary for worker's compensation, and against whose recovery NHIC does not have subrogation rights or a right of credit against future benefits.

3

CR.450-52 Based upon the agreement by Moras' counsel to escrow $250,000 out of the settlement funds to cover NHIC's subrogation claims, NHIC is solely pursuing its subrogation claim against the Moras on appeal.2

On April 15, 2015, the trial court entered a final order of dismissal of all claims. CR.459-60 On April 20, 2015, the trial court entered an agreed final judgment and approval of minor settlement. CR.463 These orders made the interlocutory summary judgment against NHIC final and appealable. On April 24, 2015, NHIC timely filed its notice of appeal. CR.474

## SUMMARY OF THE ARGUMENT

NHIC appeals from the trial court's order granting the Moras' motion for summary judgment, denying its right to recover past benefits paid to the Moras, and denying its credit against future benefits.

NHIC's first issue asserts that the trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only pertain to general liability insurance coverage that the parties were required to secure for their indemnity obligations. The waiver requirement under Paragraph 13 applied to "insurance coverages of the kind and in the amount set forth in Exhibit "A", insuring the liabilities specifically assumed by Contractor in Paragraph 14 of this Contract. " The waiver requirement under Subparagraph 14.8 expressly applied to "liability insurance". Worker's

---

2 *See Texas Mutual Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 38-39 (Tex. 2008)("When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion – the plaintiffs, the plaintiffs' attorney, and the defendants. As between those parties, we have held that generally those who received the funds unlawfully (the plaintiffs and their attorney) should disgorge them rather than making

4

compensation insurance is first-party coverage, which is not third-party "liability insurance" and which is not intended to insure indemnity obligations.

NHIC's second issue asserts that even if the waiver of subrogation provisions apply to worker's compensation coverage, they are limited to liabilities assumed by Trinidad. In this case, Trinidad did not agree to assume the liabilities of either Laredo, or the other defendants. Paragraph 14.8 of the Laredo / Trinidad contract does not apply, as Paragraph 14.7 excepts Trinidad from any loss or damage resulting from the use of materials furnished by Laredo. As it is undisputed that Laredo provided Trinidad the subject transfer pump which resulted in Mr. Mora's death, there are no "liabilities specifically assumed" by Trinidad which would trigger the waiver of subrogation clause of Paragraph 13.

NHIC's third issue asserts that the trial court erred in in ruling that NHIC waived its rights of subrogation against the non-Laredo defendants, as any possible waiver of subrogation as to worker's compensation benefits was limited to claims against the "Operator", which was Laredo. The waiver in the written contract cannot be inferred, but must be explicit. Since the waiver under Paragraph 13 does not waive subrogation against Operator's Parties, a waiver of subrogation in favor of Operator's Parties cannot be inferred.

This Court should reverse the trial court's summary judgment, and remand the case to the trial court for a new trial on NHIC's claims.

_____

the tortfeasors pay twice.").

# ARGUMENT

**ISSUE 1: The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only pertain to general liability insurance coverage that the parties were required to secure for their indemnity obligations.**

## ARGUMENT AND AUTHORITIES FOR ISSUE 1:

**A.    Waiver requirements.**

NHIC's insurance policy contains a Blanket Waiver of Subrogation Endorsement, which provides that NHIC shall waive its subrogation rights for limited occurrences. In particular, the endorsement provides in part:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> . . . .
>
> (X)    Blanket waiver
>        Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

3 This is standard form WC 42 03 04A, dated January 2000. As noted by the clear language of the endorsement, subrogation is only waived where Trinidad is required by a written contract to obtain this waiver.

---

3 *See Plaintiffs and Defendants' Motion for Summary Judgment filed September 8, 2014*, Ex.2. p.TD1322. This was requested to be part of the record but omitted by the trial court clerk; a supplemental record has been requested and will soon be filed.

Both sides agree that in order to have a valid waiver of subrogation, two conditions must be met. First, Lilly must obligate itself to a waiver pursuant to an underlying contract with Approach (here, the MSA), and second, it must obtain a separate endorsement from its insurance carrier waiving those rights. *See, e.g., Chevron U.S.A. v. Cigna, No. 09-97-00032-CV, 1998 Tex. App. LEXIS 5043, 1998 WL 472501, at \*3-4 (Tex. App.--Beaumont Aug. 13, 1998, pet. denied)* (not designated for publication) (enforcing waiver of subrogation clause); *see also Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 355 (Tex. 2000)* (noting subrogation waiver in underlying contract and separate endorsement, but holding insurer's claims were outside scope of waiver).

*Approach Operating, LLC v. Resolution Oversight Corp.,* 2012 Tex. App. LEXIS 5437, at 7 (Tex. App. Austin July 3, 2012, no pet). The waiver in the written contract cannot be inferred, but must be explicit.

Approach contends the "express terms of the MSA" similarly required a waiver of subrogation. Unlike the cases discussed above, however, the MSA contains no explicit mention of subrogation. And Approach points to no authority indicating we may infer a waiver of subrogation. **On the contrary, Texas courts require explicit waivers of subrogation and will not read them into contracts.** For example, in *Reliance Ins. Co. v. Hibdon*, the court refused to find a waiver of subrogation in favor of a company's employee when the clause only explicitly mentioned the employer.

*Id*, at 14 (Tex. App. Austin July 3, 2012, no pet)(emphasis added)(citing *Reliance Ins. Co. v. Hibdon,* 333 S.W.3d 364 (Tex. App.--Houston [14th Dist.] 2011, pet. den'd)). In this case, Trinidad was not required to secure a waiver of subrogation under the terms of its agreement with Laredo; as such, NHIC's subrogation rights were not waived.

The Moras cite two paragraphs from the contract in support of their waiver contention, Paragraph 13, and the amended Paragraph 14.8. These paragraphs provide:

**13. INSURANCE**

During the life of this Contract, Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the

7

state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and in the amount set forth in Exhibit "A", insuring the liabilities specifically assumed by Contractor in Paragraph 14 of this Contract. Contractor shall procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be canceled or materially changed without thirty (30) days prior written notice to Operator.  For liabilities assumed hereunder by Contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator.  Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes and shall maintain, at Operator's expense, or shall self insure, insurance coverage as set forth in Exhibit "A" of the same kind and in the same amount as required by Contractor, insuring the liabilities specifically assumed by Operator in Paragraph 14 of this Contract.  Operator shall procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be canceled or materially changed without thirty (30) days prior written notice to Contractor. Operator and Contractor shall cause their respective underwriters to name the Contractor's Group and the Operator's Group, as appropriate, as an additional insured but only to the extent of the risks, obligations and liabilities assumed by operation of this Contract, including, but not limited to, the drilling rig.

CR.93,154,375

14.8 **Contractor's Indemnification of Operator:**   Contractor shall release Operator and Operator's Parties from any liability for, and shall protect, defend and indemnify Operator and Operator's Parties, its officers, directors, employees and joint owners from and against all claims demands and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees (collectively the "Contractor's Parties"), on account of bodily injury, death or damage to property.  Contractor shall further release Operator and Operator's Parties of any liability for, and protect, defend and indemnify Operator, its officers, directors, employees and joint owners from and against all claims, demands and causes of action of every kind and character, without limit, arising in connection herewith in favor of any third party or parties (excluding "Operator's Parties"), on account of bodily injury, death or damage to property causes by the negligent or willful acts of Contractor's Parties.  Likewise, Contractor shall be responsible for and shall protect, defend and indemnify Operators, its officers, directors, employees and joint owners from and against any fines or sanctions imposed by any governmental agency or authority arising from any unlawful act or acts committed by Contractor's Parties while in the course of performance of this Contract.  Contractor's indemnity

under this paragraph shall be without regard to and without any right of contribution from any insurance maintained by the operator pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Paragraph 14.8 (which Contractor and Operator hereby agree will be supported by either available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under law. The provisions of this paragraph shall be subject to those contained elsewhere in this contract (including Paragraph 14.11): In case of conflict, the other provisions of this contract shall govern.

CR.102,163,384 Each of the waiver clauses in the agreement should be interpreted to limit the waiver only to Trinidad's general liability insurance coverage, and not its worker's compensation coverage.

**B. Paragraph 13 waiver.**

As to Paragraph 13, although worker's compensation insurance is one of the required coverages listed on Exhibit "A", it was not one of the "insurance coverages of the kind and in the amount set forth in Exhibit "A", insuring the liabilities specifically assumed by Contractor in Paragraph 14 of this Contract. " Paragraph 14 addresses "Responsibility for Loss or Damage, Indemnity, Release of Liability and Allocation of Loss." Nowhere in Paragraph 14 is worker's compensation insurance mentioned. The "liabilities specifically assumed" in Paragraph 14 refers to the indemnity requirement. *See Ken Petroleum Co., et al v. Questor Drilling Corp.*, *et al,* 24 S.W.3d 344 (Tex. 2000). Finally, the Operator's Addendum to Subparagraph 14.13 reflects that Paragraph 13 pertains to the liability insurance requirement: "Each party covenants and agrees to support this indemnity agreement by available liability insurance coverage as set forth in Paragraph 13."

9

General liability insurance may provide coverage to companies other than the policyholder in support of an indemnity obligation; worker's compensation coverage does not. Worker's compensation coverage only provides for the payment of medical or indemnity benefits to the policyholder's employees, or death benefits to the employees' beneficiaries. Worker's compensation coverage is not third party liability coverage;[4] it is first party insurance coverage.[5]  The worker's compensation policy is a three party agreement between the carrier, employer and employee. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex. 1988). The worker's compensation policy does not provide coverage for any indemnity obligation assumed by Trinidad, nor can an unaffiliated company such as Laredo be added as an additional insured to Trinidad's worker's compensation coverage, as Laredo is not an alternate employer for Trinidad's employees.

**C.      Subparagraph 14.8 and 14.13 waivers.**

The amended language of Subparagraph 14.8 and the language of Subparagraph 14.13 also support the interpretation that the waiver requirement should only apply to coverage under the general liability policy. These clauses expressly limit the waiver to liability insurance in the same sentence requiring the waiver:

> 14.8 [Addendum] *Contractor's Indemnification of Operator*:
> . . . . If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Paragraph 14.8 (which Contractor and Operator hereby agree will be supported either by available **liability insurance**, **under which the insurer has no right of subrogation against the**

---

4 *See* 28 TEX. ADMIN. CODE § 21.202 (8) (West 2015("Third-party coverage--Benefits and other rights provided by an insurance contract to any person other than the insured.)
5 *See* 28 TEX. ADMIN. CODE § 21.202 (5) (West 2015)(" First-party coverage--Benefits and other rights provided by an insurance contract to an insured.")

**indemnities, or voluntary self-insured, in part or whole**) exceed the maximum limits permitted under applicable law.

CR.102,163,384 (emphasis added).

> *14.13  Indemnity Obligation:*
> *. . . . The indemnities, releases, and assumptions of liability extended by the parties hereto under the provisions of Paragraph 14 shall in the case of Contractor, inure to the benefit of Contractor, its parent, holding and affiliated companies and their respective officers, directors, employees, agents, servants, and its subcontractors ("Contractor's Group"), and in the case of Operator, shall inure to the benefit of Operator and its parent, subsidiary, related and affiliated corporation(s), partnership(s), and limited liability companies, and its and their non-operators, co-owners, co-lesseees, partners, co-partners, co-venturers, joint venturers, and other contractors and subcontractors (with the exception of Contractor and its subcontractors) and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, and subrogees of all of the foregoing ("Operator's Group").  The parties agree that each party will obtain* **liability insurance**, *or provide self-insurance (each with minimum limits not less that the amounts set forth in Exhibit A) for the benefit of* **and with no right of subrogation against the other party or such party's Group as defined in this Subparagraph 14.13, and that such insurance shall support the parties' mutual indemnity** *obligations under Subparagraphs 14.1 through 14.12.*

CR.94,155,376 (bold emphasis added).

As reflected in Subparagraph 14.13, the insurance requirement supports the mutual indemnity obligations under Subparagraph 14.1 through 14.12.  This provision  provides compliance with the Texas Oilfield Anti-Indemnity Act, Tex. Civ. Prac. & Rem. Code Chapter 127.  See also Operator's Addendum, Subparagraph 14.13(b).  However, Laredo did not have a reciprocal requirement to secure worker's compensation insurance, per Exhibit "A".  This is consistent with the interpretation that the mutual indemnity, liability insurance and waiver of subrogation requirements were separate from Trinidad's worker's compensation insurance requirement.

11

**ISSUE 2: The trial court erred in holding that NHIC's worker's compensation subrogation claims were waived, as Trinidad did not assume the liabilities of the defendants for this accident.**

**ARGUMENT AND AUTHORITIES FOR ISSUE 2:**

Even if the waiver of subrogation provisions apply to worker's compensation insurance, they do not apply under the facts of this case. The waiver provisions are limited to liabilities assumed by Trinidad, which are the liabilities for which Trinidad is obligated to indemnify Laredo. The provisions do not apply as Trinidad did not agree to assume liability for this accident.

**A. The waiver of subrogation endorsement only applies to the liability of Laredo which Trinidad agreed to assume via the indemnity provision.**

The Texas Supreme Court has recognized that a clause with substantially similar language did not waive the carrier's right of subrogation, when the corresponding indemnity clause does not apply. *See Ken Petroleum Co., et al v. Questor Drilling Corp.*, *et al,* 24 S.W.3d 344 (Tex. 2000). In *Ken Petroleum Co.,* the contract between Ken Petroleum and Questor contained mutual indemnification clauses, where the parties were required to indemnify each other for claims by their respective employees. The "Insurance" clause then provided the following waiver clause: "For liabilities assumed hereunder by contractor [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator [Ken Petroleum] will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes." *Ken Petroleum Co.,* 24 S.W.3d at 355. The Court found that the waiver provision did not apply to waive Ken

12

Petroleum's insurance carrier's right of subrogation against Questor for liability payments made to the family of a Questor employee killed on the job site:

> Questor's contentions are not well-founded. Ken Petroleum agreed to cause its underwriters to waive their subrogation rights only as to amounts Ken Petroleum might have to pay under its agreement to indemnify Questor. Ken Petroleum did not agree to indemnify Questor for injuries to or the death of Questor's employees. To the contrary, Questor agreed that it would indemnify Ken Petroleum if a Questor employee were injured or killed. The foregoing provision did not waive the rights of the Underwriters to enforce, as subrogees, the indemnity obligations Questor owed to Ken Petroleum.
>
> Questor next points to an endorsement to Ken Petro-leum's policy with the Underwriters entitled "WAIVER OF SUBROGATION WHEN REQUIRED BY CONTRACT" which says:
>
> > It is agreed that, with respect to such insurance as is afforded by this Cover Note, the company waives any right of subrogation against the "principal" named below by reason of any payment made on account of injury, including death resulting therefrom or on account of property damage sustained by any person or entity while the assured is engaged in any of the operations described in the Schedule of this Cover Note.
> >
> > "Principal" means any party to whom the named assured is contractually obligated to waive its legal rights of indemnification.
>
> Questor is not a party to the contract of insurance between Ken Petroleum and its Underwriters. Questor must look to its own contract with Ken Petroleum to determine what subrogation rights it may insist that Ken Petroleum require its insurers to waive. Sections 13 and 14.9 of the drilling contract require Ken Petroleum to cause its insurers to waive their subrogation rights only with regard to Ken Petroleum's agreement to indemnify Questor for the death of or injury to Ken Petroleum employees and certain others. The drilling contract does not require Ken Petroleum to cause its insurers to waive subrogation rights when they pay amounts that Questor should have paid under its agreement to indemnify Ken Petroleum. If Ken Petroleum is not contractually obligated to Questor to enforce a waiver of subrogation, Questor cannot insist that Ken Petroleum assert a waiver of subrogation when Ken Petroleum and the Underwriters both agree that the Underwriters stepped into Ken Petroleum's shoes by paying $ 450,000 to settle the Hemphill litigation.

*Ken Petroleum Co.,* 24 S.W.3d at 355-56.

Similarly, the Texas Supreme Court held earlier this year that an insurance obligation dependent on "liabilities assumed" was only triggered if there is an enforceable indemnity agreement. The following is the Court's summary of its holdings:

> As to the first question, we hold that (1) the Transocean insurance policies include language that necessitates consulting the drilling contract to determine BP's status as an "additional insured"; (2) under the terms of the drilling contract, BP's status as an additional insured is inextricably intertwined with limitations on the extent of coverage to be afforded under the Transocean policies; (3) the only reasonable construction of the drilling contract's additional-insured provision is that BP's status as an additional insured **is limited to the liabilities Transocean assumed in the drilling contract**; and (4) BP is not entitled to coverage under the Transocean insurance policies for damages arising from subsurface pollution because BP, not Transocean, assumed liability for such claims. We therefore answer the first certified question in the negative, and based on our analysis of that issue, do not reach the second question.

*In re Deepwater Horizon,* 2015 Tex. LEXIS 141 (Tex. 2015)(emphasis added). The case arose out of "the April 2010 explosion and sinking of the Deepwater Horizon oil-drilling rig, which claimed eleven lives and resulted in subsurface discharge of oil into the Gulf of Mexico at alarming rates for nearly three consecutive months." The Court accepted a certified question from the Fifth Circuit as to whether BP was entitled to coverage for subsurface pollution under an additional insured endorsement of Transocean's insurance policy. The analysis and holding of the Court relevant to this case follows:

> In the Drilling Contract, BP and Transocean agreed to a "knock-for-knock" allocation of risk that is standard in the oil and gas industry. Among other indemnity provisions, **Transocean agreed to indemnify BP for above-surface pollution regardless of fault, and BP agreed to indemnify Transocean for all pollution risk Transocean did not assume, i.e., subsurface pollution**.
>
> Without limiting Transocean's indemnity obligations, the Drilling Contract further required Transocean to carry multiple types of insurance at its own expense. Among the required policies, Transocean was obliged to carry comprehensive general

liability insurance, including contractual liability insurance for the indemnity agreement, of at least $10 million. Transocean was also charged with naming BP, its affiliates, officers, employees, and a host of other related individuals and entities:

> as additional insureds in each of [Transocean's] policies, except Workers' Compensation *for liabilities assumed by [Transocean] under the terms of [the Drilling] Contract.* **(Emphasis added.)**

To the extent the terms of the Drilling Contract are incorporated into Transocean's insurance policies, the proper construction of the emphasized portion of the foregoing additional-insured provision becomes central to the resolution of the coverage issue before us.

. . . .

After BP made a demand for coverage, the Insurers sought a declaration that BP would not be entitled to additional-insured coverage for subsurface-pollution claims arising from the Deepwater Horizon incident **because the Drilling Contract limits the additional-insured obligation to "liabilities assumed by [Transocean] under the terms of [the Drilling] Contract."**

. . . .

As *Urrutia* demonstrates, an insurance policy may incorporate an external limit on additional-insured coverage.  In such cases, the external limit is, in effect, an endorsement to the insurance policy that "suppl[ies] the limits of coverage and extend[s] those benefits to the customer identified therein as accepting the [insured's] offer of insurance." *Id.* at 443. By tying additional-insured coverage to the terms of an underlying agreement, the parties procure only the coverage the insured is contractually obligated to provide, thereby minimizing the insurer's exposure under the policy and the named insured's premiums. *See id.* ("The endorsement . . . allowed [the insured] to determine in the rental contracts themselves which customers would be insured and the amount of their respective coverage.").

. . . .

Applying the only reasonable construction of the additional-insured provision, **we conclude that BP is an additional insured only as to liabilities assumed by Transocean under the Drilling Contract and no others. Because Transocean did not assume liability for subsurface pollution, Transocean was not "obliged" to name BP as an additional insured as to that risk.** Because there is no obligation to provide insurance for that risk, BP lacks status as an "Insured" for the same.

15

. . . .

Such is the case here. The Drilling Contract required Transocean to name BP as an additional insured only for the liability Transocean assumed under the contract. Accordingly, Transocean had separate duties to indemnify and insure BP for certain risk, but the scope of that risk for either indemnity or insurance purposes extends only to above-surface pollution. Article 20.1 of the Drilling Contract, on which BP relies, provides that Transocean's duty to maintain insurance does not alleviate its duty to indemnify BP. This merely confirms our holding in *Getty Oil Co. v. Insurance Co. of North America* that indemnity and insurance clauses can impose separate and independent duties. 845 S.W.2d at 804. Article 20.1 does not provide that the scope of the indemnity and insurance duties are different. Instead, the additional-insured clause confirms they are congruent regarding the risk at issue by requiring Transocean to insure BP **"for liabilities assumed by [Transocean] under the terms of this Contract." Because the scope of Transocean's duty to indemnify governs the scope of Transocean's duty to insure BP, we decline BP's request to ignore the indemnity obligation when construing the Drilling Contract.**

In sum, we answer the first certified question in the negative because BP is not covered for the damages at issue by virtue of the limitations on the scope of its additional-insured status imposed in the Drilling Contract and incorporated into the Transocean insurance policies by reference.

*Id*, at 5 – 40 (emphasis added). The analysis in determining whether an additional insured endorsement is triggered under *Deepwater Horizon* is no different that the analysis in this case as to whether a waiver of subrogation endorsement is triggered in this case.

Finally, in a case from the Southern District of Texas involving the application of a waiver clause to a worker's compensation carrier's subrogation rights, the reviewing court referenced the contract's indemnity clause in interpreting the scope of the limiting term of the waiver clause "as respects risks and liabilities assumed by Contractor. . . ." In that case, the indemnity clause was clear that the employer was assuming the defendant's liability: "The state-court suit is a claim against St. Mary 'arising out of or related to bodily injury or death' of Select's employees for 'medical, compensation or other benefits.' (Id., ¶ 11.2). Under the

16

unambiguous language of the MSC, Select assumed St. Mary's liability in that suit." *Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012). However, in this case Laredo's contract does not call for Trinidad to assume liability for the claims arising out of Mr. Mora's death.

**B.      Trinidad did not agree to assumed liability for this accident.**

In this case, Laredo / Trinidad contract excepts Trinidad from all liability for claims arising out of this accident:

> 14.7  Inspection of Materials Furnished by Operator:  Contractor agrees to visually inspect all materials furnished by Operator before using same and to notify Operator of any apparent defects thereto.  **Contractor shall not be liable for any loss or damage resulting from the use of materials furnished by Operator,** and Operator shall release Contractor from, and shall protect, defend and indemnify Contractor from and against, any such liability.

CR.93,154,375 (emphasis added).   In this case, the summary judgment evidence demonstrates that Mr. Mora was killed by transfer pump, which Laredo's representative Kenneth E. Dornblaser admits in his affidavit was provided by Laredo to Trinidad.  CR.187 The transfer pump is part of the materials furnished by Laredo to Trinidad to perform its work.

This Court addressed the indemnity obligations arising out of a drilling contract with an identical Paragraph 14.7 and substantially similar Paragraphs 14.8 and 14.9 in the case of *Sonerra Res. Corp. v. Helmerich & Payne Int'l Drilling Co.,* 2012 Tex. App. LEXIS 7730 (Tex. App. Houston 1st Dist. Aug. 30, 2012, pet. den'd).  The facts of *Sonerra* are as follows:

> Sonerra entered into an International Association of Drilling Contractors Drilling Bid Proposal and Daywork Drilling Contract (the "drilling contract") with H&P. Sonerra, an oil-well operator, retained H&P, a drilling contractor, to drill and

17

work on an oil well in Nacogdoches County, Texas. During H&P's work at the well, H&P employee Billy Jack McDaniel was injured when hot gas was released from the well after a stripper rubber inside a rotating-control device ("RCD") failed. McDaniel sued Sonerra, who had furnished the RCD and the stripper rubber to H&P for use in drilling operations. Sonerra demanded that H&P, pursuant to an indemnity provision in article 14.8 of the drilling contract, defend and indemnify it from the claims made against it by McDaniel. H&P refused, contending that an indemnity provision in article 14.7 of the drilling contract required that Sonerra indemnify it and release it from any such liability.

The indemnity provisions relied upon by the parties are contained in Section 14 of the drilling contract, entitled "Responsibility for Loss or Damage, Indemnity, Release of Liability and Allocation of Risk." Section 14 provides, in pertinent part,

> 14.7 Inspection of Materials Furnished by Operator: Contractor agrees to visually inspect all materials furnished by Operator before using same and to notify Operator of any apparent defects therein. Contractor shall not be liable for any loss or damage resulting from the use of materials furnished by Operator, and Operator shall release Contractor from, and shall protect, defend and indemnify Contractor from and against, any such liability.

> 14.8 Contractor's Indemnification of Operator: Contractor shall release Operator of any liability for and shall protect, defend and indemnify Operator from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors of any tier (inclusive of any agent or consultant engaged by Contractor) or their employees, or Contractor's invitees, on account of bodily injury, death, or damage to property. Contractor's indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by Operator pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

> 14.9 Operator's Indemnification of Contractor: Operator shall release

18

contractor of any liability for, and shall protect, defend and indemnify Contractor from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors of any tier (inclusive of any agent, consultant or subcontractor engaged by Operator) or their employees, or Operator's invitees, other than those parties identified in Subparagraph 14.8 on account of bodily injury, death or damage to property. Operator's indemnity under this paragraph shall be without regard to and without any right to contribution from any insurance maintained by Contractor pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.9 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

*Sonerra,* 2012 Tex. App. LEXIS 7730, at 1-5. This Court held that Paragraph 14.7 excepted

the contractor (H&P) from the obligation to provide indemnity to the operator (Sonerra) for

the accident injuring H&P's employee, irrespective of the provisions of Paragraph 14.8:

In sum, to limit article 14.7 so as not to include within it an indemnity by Sonerra in favor of H&P for any claims brought by H&P employees for bodily injury caused by materials furnished by Sonerra, we would have to insert additional language into the drilling contract. Article 14.8 does not modify the indemnity and release language of article 14.7. If the parties had intended for the indemnity provision in article 14.7 to be so limited, the parties could have included language limiting the class of losses or damages to which it applied or excepting employee claims for losses or damages that would otherwise fall within article 14.8. When properly harmonized, and when considered in light of the entire agreement, article 14.7 of the drilling contract unambiguously precludes Sonerra's indemnity claims against H&P. Accordingly, we hold that the trial court did not err in granting H&P's summary-judgment motion and denying Sonerra's summary-judgment motion.

*Sonerra,* 2012 Tex. App. LEXIS 7730, at 27-28.  Paragraph 14.7 of the Laredo / Trinidad contract is a specific clause which carves out an exception to the general provisions of Paragraphs 14.8 and 14.9 of the Operator's Addendum, just as was the case in *Sonerra:*

> When all of the articles of the drilling contract are harmonized, it is evident that the indemnity obligation and release in article 14.7 carve out a set of claims that might otherwise be covered by the indemnity provision in article 14.8. *See Clark v. Cotten Schmidt, L.L.P., 327 S.W.3d 765, 773 (Tex. App.--Fort Worth 2010, no pet.)*; ("A specific contractual provision controls over a general provision"); *Ayres Welding Co., Inc. v. Conoco, Inc., 243 S.W.3d 177, 181 (Tex. App.--Houston [14th Dist.] 2007, pet. denied)* (providing that more specific provisions of contract will control over general).

*Sonerra,* at 22-23.

The Moras argue that the electric transfer pump is "equipment", and as such should not be considered "materials" under Subparagraph 14.7.  However, this Court in *Sonerra* held that "materials" under Subparagraph 14.7 of the IADC contract (the form also used for the Laredo / Trinidad contract) includes equipment such as a rotating-control device ("RCD"):

> In sum, there is simply no indication in the written contract that these terms, as used throughout the contract, are mutually exclusive and refer to a distinct set of items.
>
> Sonerra's efforts to restrict the construction of the term "materials" to exclude the stripper rubbers inside the RCD conflicts with the plain, ordinary, and generally accepted meanings of the words used in the drilling contract. *See Valence Operating Co., 164 S.W.3d at 662*. The terms "material" or "materials" are defined as "the matter from which a thing is or can be made" or "things needed for an activity,"[4] "the substance or substances of which a thing is made or composed" or "any constituent element,"[5] **"the equipment necessary for a particular activity,"[6]** and "the elements, constituents,[7] or substances of which something is composed or can be made" or an "apparatus necessary for doing or making something."[8]
>
> 4   THE NEW OXFORD AMERICAN DICTIONARY 1054 (2001).
> 5   RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1185 (2d. ed. 2003).

6    COLLINS ENGLISH DICTIONARY - COMPLETE & UNABRIDGED (10th ed. 2009).

7 Sonerra even cites in its briefing the definition of "material" that refers to an "element" or "constituent." The term "element" is defined to be a "constituent part" and a "distinct part of a composite device." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 402 (11th ed. 2003). And constituent is defined to be "an essential part" and a "component element," WEBSTER'S DICTIONARY 248 (10th ed. 1999); "a constituent element, material, etc.; component," RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 436 (2d. ed. 2003); and a "component part of something." THE NEW OXFORD AMERICAN DICTIONARY 368 (2001).

8   MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 765 (11th ed. 2003).

Sonerra admits in its briefing that it furnished the stripper rubber and the stripper rubber is a "component" of the RCD. **The plain language of article 14.7, when considered in the context of the drilling contract, indicates that the parties used the term "materials" to generally refer to the physical items that were to be provided by Sonerra at the well. Sonerra's argument that article 14.7 is inapplicable because the defective stripper rubber and the RCD can only be considered a piece of "equipment" and not "materials" necessarily fails.**[9]

9 Sonerra also argues that the parties' use of the term "equipment" in other indemnity provisions in the drilling contract reveals that the parties' used the terms "equipment" and "materials" to mean different things. For example, in article 14.1 H&P assumed liability for damage to its surface equipment, in article 14.2 Sonerra assumed liability for H&P's in-hole equipment, in article 14.3 Sonerra assumed liability for damage to H&P's equipment resulting from hydrogen sulfide or other corrosive elements, and in article 14.4 Sonerra assumed liability for its own equipment. We need not address whether the parties' use of the term equipment in these other indemnity provisions pertains to a subset of items described in the drilling contract, including items described in Exhibit A. Rather, we confine our analysis to determining the meaning of the term "materials" as that term was used by the parties in article 14.7 and in light of the entire drilling contract.

*Sonerra,* at 16-18 (emphasis added). Similarly, in this case the electric transfer pump should

be considered both "materials" and "equipment", as those terms are not mutually exclusive.

The Laredo / Trinidad contract has the identical IADC form Exhibit "A" as in *Sonerra,* with the

referenced Paragraphs 4 and 5 listing the "machinery, equipment, tools, materials, supplies,

21

instruments, services and labor" to be provided by the contractor and operator, respectively, and Paragraph 6 entitled "Equipment, Materials and Services to be Furnished by Designated Party." *See Sonerra*, at 14-15; CR.97-98,158-159,379-380   It also has the same Subparagraphs 4.9 and 14.12 referenced in the *Sonerra* opinion at p. 13-14 in support of the court's opinion that the terms "materials" and "equipment" are not mutually exclusive.  CR.94,155,376

As Subparagraph 14.7 provides that Trinidad shall "not be liable for any loss or damage resulting from the use of materials furnished by Operator," Trinidad did not assume the liability of either the Operator or Operator's Parties under the amended Subparagraph 14.8.  It would make no sense for Trinidad to be required to indemnify "Operator's Parties" under Subparagraph 14.8 for liability from which it was excepted under Subparagraph 14.7.

**C.     NHIC did not have the burden to prove a condition precedent to the exclusion of indemnity.**

The Moras argued, for the first time in their Reply Brief, that that the first sentence of Subparagraph 14.7 is a "condition precedent" which was not triggered.   To recap, Subparagraph 14.7 provides:

> 14.7  Inspection of Materials Furnished by Operator:  Contractor agrees to visually inspect all materials furnished by Operator before using same and to notify Operator of any apparent defects thereto.  Contractor shall not be liable for any loss or damage resulting from the use of materials furnished by Operator, and Operator shall release Contractor from, and shall protect, defend and indemnify Contractor from and against, any such liability.

The Moras then argued that this was a contractual exclusion to the indemnity requirement, which NHIC had the burden to prove.  Actually, the contractual exclusion to the indemnity agreement was not the alleged condition precedent (the first sentence), but was the fact that

22

the loss or damage resulted from the use of materials furnished by Laredo (the second sentence). Proof that the loss or damage resulted from the use of materials excludes the application of the indemnity provision of Paragraph 14.8.

Nonetheless, the first sentence is not a condition precedent to Trinidad's right of indemnity against Laredo for losses or damages resulting from the use of materials furnished by Operator. This Court has held that a breach of contract claim by an indemnitor does not create a fact issue as to the indemnity claim asserted by the indemnitee, as the right of indemnity is not a dependent covenant, but is an independent obligation:

## C. *Breach of Contract Fact Issue*

In issue four, Tesoro argues that the trial court erred in granting summary judgment to Nabors because a disputed issue of fact exists as to whether Nabors breached the contract, excusing Tesoro of its duty to indemnify Nabors.

Tesoro contends Nabors breached the paragraph in the drilling contract that provided: "[Nabors] shall maintain well control equipment in good condition at all times and shall use all reasonable means to prevent and control fires and blowouts and to protect the hole." It alleges this breach occurred when the BOPs failed because Nabors chose to buy and install inferior and improper products into BOPs that did not have proven capacities or technical support that would maintain the well control equipment in good condition at all times.

Tesoro claims these actions breached the contract, and they also claim Nabors was grossly negligent for buying and installing the "inferior and improper" products.

As Nabors stated, Nabors's conduct in supplying well control equipment was either: (1) prudent; (2) negligent; (3) grossly negligent; or (4) intentional misconduct. Tesoro failed to raise a fact issue that Nabors's conduct was grossly negligent, and no party has alleged intentional misconduct. Thus, Nabors's conduct was either prudent or it was negligent. If the conduct was prudent, the conduct was not actionable. If the conduct was negligent, Tesoro is required to indemnify Nabors under its contract with Nabors. Either way, Tesoro's argument fails.

Tesoro further contends that indemnity is a dependant covenant; therefore, a breach of a part of the indemnity agreement excuses Tesoro from indemnifying Nabors at all. We disagree.

An indemnity agreement "is an original obligation between the contracting parties and independent of other agreements." *Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex. App.--Tyler 1992, no writ). A prerequisite to the remedy of excuse of performance is that covenants in a contract must be mutually dependent promises. *Hanks v. GAB Bus. Serv.*, 644 S.W.2d 707, 708, 26 Tex. Sup. Ct. J. 169 (Tex. 1982). Because an indemnity agreement is an independent covenant, Tesoro is not excused from performing under the contract based on unsupported allegations that Nabors breached the contract.

We overrule Tesoro's issue four.

*Tesoro Petroleum Corp. v. Nabors Drilling United States*, 106 S.W.3d 118, 127 (Tex. App.-Houston[1st Dist.] 2002, writ den'd); *see also Banner Sign & Barricade, Inc. v. Berry GP, Inc.,* 2008 Tex. App. LEXIS 7120, 20-21 (Tex. App. Corpus Christi Sept. 25, 2008, pet. den'd); *Coastal Mart Inc. v. Southwestern Bell Telephone Co.,* 154 S.W.3d 839, 852 (Tex. App.--Corpus Christi 2005, Castillo, J. concurring, pet. granted, judgm't vacated w.r.m.); *Joseph Thomas, Inc. v. Graham,* 842 S.W.2d 343, 346 (Tex. App.--Tyler 1992, no writ).

Since waiver is an affirmative defense, it is the Moras' burden to prove it applies as a matter of law.6 Additionally, as the Moras' filed a traditional motion for summary judgment, they had the burden to prove as a matter of law that waiver applies. As the Moras' did not prove their affirmative defense of waiver as a matter of law, this Court should reverse the trial court's summary judgment.

---

6 *See* Tex. Rule of Civ. Proc. 94; *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993).

**ISSUE 3:  The trial court erred in holding that NHIC waived its rights of subrogation against the non-Laredo defendants, as any possible waiver of subrogation as to worker's compensation benefits is limited to claims against Laredo.**

**ARGUMENT AND AUTHORITIES FOR ISSUE 3:**

Even if there is an enforceable waiver of subrogation in favor of Laredo pertaining to worker's compensation benefits, it does not accrue to the benefit of the remaining defendants nor waive NHIC's subrogation rights as to recoveries from those defendants.  Notably, the waiver clause in Paragraph 13 only waives subrogation against the "Operator", not the "Operator's Parties":  "For liabilities assumed hereunder by Contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation **against Operator**. Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes . . . ."  (emphasis added)  Only Laredo Petroleum, Inc. is a defined "Operator" under the contract.  CR.90,151,372

In *Reliance Ins. Co., et al v. Hibdon,* 333 S.W.3d 364 (Tex.App.-Houston [14th Dist], pet. den'd), the Fourteenth Court of Appeals applied a worker's compensation waiver endorsement identical to the one in this case, in finding that the contract did not call for a waiver of subrogation in favor of the defendant, Hibdon.  Hibdon was an employee of co-defendant RME, which had entered into a drilling contract with Grey Wolf Drilling Company, the employer of the injured employee.  The court recognized that the indemnity clause did include "employees" of RME as covered parties:

> 11.1 Each party hereto agrees to indemnify and hold the other party, its officers, *employees,* subsidiaries, affiliated companies and non-operating Interest Holders harmless from any and all losses, claims, actions, costs, expenses, judgments, subrogations or other damages resulting from injury . . . to any person

25

(including, but not limited to, the parties hereto, their respective *employees,* representatives, agents, invitees and subcontractors) or damage to property of any person . . . arising out of the negligent act or willful misconduct of the indemnifying party, its employees, agents, contractors or invitees.

(emphasis added).

*Reliance Ins. Co.,* 333 S.W.3d at 370. However, the waiver of subrogation clause of the RME/Grey Wolf contract did not include "employees" as covered parties:

> . . . . . Operator [RME] and its non-operating Interest Holders shall be named as additional insureds in each of such policies. *[A] "Waiver of Subrogation" in favor of Operator, its subsidiaries, affiliated companies and non-operating Interest Holders shall be added to all policies of insurance*, including Contractor's [Grey Wolf] property insurance covering Contractor's rig and equipment.

(emphasis added).

*Id.* Based upon the omission of "employees" in the waiver clause, the court held:

> The waiver requirement in the RME/Grey Wolf contract is straightforward: "[A] 'Waiver of Subrogation' in favor of Operator, its subsidiaries, affiliated companies and non-operating Interest Holders shall be added to all policies of insurance." Considering the contract as a whole, we conclude the language sub judice is unambiguous and construe the contract as written. *See Marshall, 388 S.W.2d at 181.* According to the plain meaning of the provision, RME and Grey Wolf intended for Grey Wolf's workers' compensation carrier to waive subrogation in RME's favor but did not intend for a similar waiver in Hibdon's favor. If the parties intended to provide a subrogation waiver in Hibdon's favor, they could have added the term "employees" to the provision.

*Id,* at 371.

As applied to this case, if Laredo Petroleum, Inc. is entitled to a waiver of subrogation pursuant to Paragraph 13, since Defendants Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions, Plaster & Wald Consulting Corp., Airgen & Equipment Repair,

Airgen Equipment, LLC and Roger Simmons d/b/a Rig Maintenance Service are not the defined "Operator", there is no waiver of subrogation as to NHIC's claims against these defendants. If the parties intended to provide a subrogation waiver in favor of the other defendants, they could have added the term "Operator's Parties" to Paragraph 13.

The Moras argue that Subparagraph 14.8 of the addendum enlarged the scope of the waiver to include the "Operator's Parties". However, the waiver in Subparagraph 14.8 is expressly limited to liability insurance: "(which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntary self-insured, in part or whole)." Moreover, the broader coverage of Subparagraph 14.8 cannot control over the more restrictive coverage of Paragraph 13, as per the last sentence of Subparagraph 14.8: "The provisions of this paragraph shall be subject to those contained elsewhere in this contract (including Paragraph 14.11): In case of conflict, the other provisions of this contract shall govern." Finally, any indemnity obligation on the part of Trinidad under Subparagraph 14.8 in favor of the "Operator's Parties" cannot be construed to be a waiver of subrogation. *See Approach Operating, LLC,* 2012 Tex. App. LEXIS 5437, at 17-18 ("Approach argues this includes a claim for subrogation and asks us to construe the indemnity clause as requiring a waiver of subrogation. Again, Approach cites no cases to support the proposition that we can treat indemnity clauses as implied waiver of subrogation clauses.")

As such, the trial court erred in granting summary judgment that NHIC waived subrogation as to these defendants and any recovery by the Moras from these defendants, and

27

that it waived its credit against future benefits under Tex. Labor Code § 417.002(b) in the net amount of the Moras' recovery from these defendants. Notably, only 4.16% of the third party settlement was apportioned to the liability of Laredo; 95.84% of the settlement was apportioned to the liability of these remaining defendants. At a minimum, NHIC is entitled to reimbursement of the past amount of benefits paid, plus a credit against future benefits of 95.84% of the net amount of the Moras' third party recovery.

## PRAYER FOR RELIEF

WHEREFORE, NHIC prays that this Court reverse the trial court's summary judgment that NHIC take nothing as to the Moras, remand the case to the trial court for a new trial on NHIC's intervention interests; that NHIC recover its taxable costs of Court, and for such other and further relief as just.

Respectfully submitted,

KELLY & SMITH, P.C.

**/s/ *Loren R. Smith***

Loren R. Smith
Texas Bar No. 18643800
4305 Yoakum Blvd.
Houston, Texas 77006
713/861-9900
713/861-7100 - FAX

ATTORNEYS FOR APPELLANT THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2015, a true and correct copy of the foregoing was forwarded by electronic transmission to the following counsel of record:

Peter M. Kelly
Kelly, Durham & Pittard, L.L.P.
1005 Heights Boulevard
Houston, Texas 77008

*/s/ Loren R. Smith*_____
Loren R. Smith


## CERTIFICATE OF COMPLIANCE AND WORD COUNT

I hereby certify that this document was produced on a computer using Microsoft Word and contains **8,993** words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Loren R. Smith*_____
Loren R. Smith

# APPENDIX

APPENDIX "A":       Trial Court's Order Granting Summary Judgment

APPENDIX "B":       Trial Court's Order of Dismissal of All Claims

APPENDIX "C":       Trial Court's Agreed Final Judgment and Approval of Minor Settlement

APPENDIX "D":       Texas Labor Code Chapter 417

APPENDIX "E":       Relevant Provisions of Laredo / Trinidad Contract

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

9/8/2014 6 08 19 PM
Chris Daniel - District Clerk Harris County
Envelope No. 2420790
By Anita Perez

## NO. 2011-47304

| | | |
|---|---|---|
| CANDIS MORA, Individually and as Next Friend of ANTHONY LORENZO DEAN MORA, EMMA ELISHA MORA, and FRANCISCO JOHN MORA, MINOR CHILDREN, and as Personal Representative of and Heir to the Estate of ANTHONY BRYAN MORA, DECEASED; and ELVIA OCHOA GARZA | § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| v. | § § § § | |
| TRINIDAD DRILLING LIMITED PARTNERSHIP; LAREDO PETROLEUM, INC.; PIONEER CONSULTING AND SERVICES, INC. D/B/A LIGHTHOUSE ENERGY SOLUTIONS; PLASTER & WALD CONSULTING CORP.; AIRGEN & EQUIPMENT REPAIR; AIRGEN EQUIPMENT, LLC; and ROGER SIMMONS d/b/a RIG MAINTENANCE SERVICES | § § § § § § § § § § § | HARRIS COUNTY, TEXAS |
| and | § § § | |
| NEW HAMPSHIRE INSURANCE COMPANY, INTERVENOR | § § | 165TH JUDICIAL DISTRICT |

### ORDER GRANTING
### MOTION FOR SUMMARY JUDGMENT

BEFORE THIS COURT is the Movants' Motion for Summary Judgment Having considered this motion, exhibits, and pleadings of counsel, this Court is of the opinion that the Motion should be **GRANTED**;

IT IS THEREFORE ORDERED that Movants' Motion for Summary Judgment is hereby **GRANTED**

ORDER GRANTING SUMMARY JUDGMENT                                      PAGE 1

**APPENDIX "A"**

447

SIGNED on this the _____ day of __FEB 1 3 2019_____ 2015

_Cumirveln Ray_

JUDGE PRESIDING

4/14/2015 9:19:40 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 4874420
By: HENDERSON, MARCELLA L
Filed: 4/14/2015 9:19:40 AM

CAUSE NO. 2011-47304

| | | |
|---|---|---|
| CANDIS MORA, Individually, as next friend of Anthony Lorenzo Dean Mora, Emma Elisha Mora, and Francisco John Mora, minor children, as next friend of Lorenzo Mora, Jr., and as Personal Representative of and Heir to the Estate of Anthony Bryan Mora, Deceased; and ELVIA OCHOA GARZA | § § § § § § § § § | IN THE DISTRICT COURT OF |
| | § | HARRIS COUNTY, TEXAS |
| VS. | § § | |
| TRINIDAD DRILLING, LLC d/b/a TRINIDAD DRILLING GP, LLC; TRINIDAD DRILLING LIMITED PARTNERSHIP; LAREDO PETROLEUM, INC.; LAREDO PETROLEUM, LLC; LAREDO PETROLEUM TEXAS, LLC; LAREDO GAS SERVICES, LLC; and PIONEER CONSULTING and SERVICES, INC. d/b/a LIGHTHOUSE ENERGY SOLUTIONS | § § § § § § § § § | 165TH JUDICIAL DISTRICT |

*RECORDER'S MEMORANDUM*
*This instrument is of poor quality at the time of imaging*

## FINAL ORDER OF DISMISSAL OF ALL CLAIMS

Plaintiffs Candis M. Mora, Individually, and as Next Friend of Anthony Lorenzo Dean Mora, Emma Elisha Mora and Francisco John Mora, Minor Children, and as Personal Representative of and Heir to the Estate of Anthony Bryan Mora, Deceased and Elvia Ochoa Garza and Defendants Trinidad Drilling Limited Partnership, Laredo Petroleum, Inc., Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions, Plaster & Wald Consulting Corporation, Aaron McGuire Individually and d/b/a Airgen & Equipment Repair, Airgen Equipment, LLC and Roger Simmons d/b/a Rig Maintenance Services filed their Motion to Dismiss All Claims with prejudice. It is therefore,

ORDERED, ADJUDGED and DECREED that all claims asserted by Plaintiffs against Defendants Trinidad Drilling Limited Partnership, Laredo Petroleum, Inc., Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions, Plaster &

**APPENDIX "B"**

459

Wald Consulting Corporation, Airgen & Equipment Repair, Airgen Equipment, LLC and Roger Simmons d/b/a Rig Maintenance Services, and all claims asserted all claims Defendants asserted against each other are hereby dismissed with prejudice to refiling same. It is, further,

ORDERED, ADJUDGED and DECREED that all taxable costs of court are to be paid by the parties incurring same. All relief requested by Plaintiffs against Defendants and relief requested by Defendants against each other not expressly granted herein, are denied.

This is a Final Judgment that disposes of all claims asserted by all parties to this action.

SIGNED this ___15___ day of ___April___, 2015.

APR 1 5 2015

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE
AND ENTRY REQUESTED:

**WALTMAN & GRISHAM**

/s/ Robert B. Waltman
Robert B. Waltman
State Bar No. 20822500
Donna Emenhiser
State Bar No. 00797835
2807 S. Texas Ave., Suite 201
Bryan, Texas 77802
(979) 694-0900
(979) 693-0840 – Fax
rob@waltman.com
donnae@waltman.com
*Attorneys for Plaintiffs*

2

460

**HARTLINE DACUS BARGER DREYER LLP**

/s/ Larry D. Grayson
Larry D. Grayson
State Bar No. 08342900
8750 N. Central Expressway, Suite 1600
Dallas, Texas 75206
(214) 369-2100
(214) 369-2118 - Fax
lgrayson@hdbdlaw.com
*Attorney for Defendant*
*Trinidad Drilling Limited Partnership*

**HEARD & MEDACK, P.C.**

/s/ James P. Davis
David W. Medack
State Bar No. 13892950
James P. Davis
State Bar No. 24028275
9494 Southwest Freeway, Suite 700
Houston, Texas 77074
(713) 772-6400
(713) 772-6495 - Fax
dmedack@heardmedackpc.com
jdavis@heardmedackpc.com
*Attorneys for Defendant*
*Laredo Petroleum, Inc.*

**PHELPS DUNBAR LLP**

/s/ David Lee Crawford
David Lee Crawford
State Bar No. 05020100
700 Louisiana, Suite 2600
Houston, TX 77002
(713) 626-1386
(713) 626-1388 - Fax
david.crawford@phelps.com
*Attorney for Defendant*
*Pioneer Consulting and Services*
*d/b/a Lighthouse Energy Solutions*

3

**TUCKER TAUNTON SNYDER & SLADE, PC**

/s/ Norman E. Snyder, Jr.
Norman E. Snyder, Jr.
State Bar No. 18818500
10370 Richmond Avenue, Suite 1400
Houston, Texas 77042
(713) 961-5800
(713) 993-2308 - Fax
nsnyder@tsslawfirm.com
*Attorneys for Defendant*
*Plaster & Wald Consulting Corp.*

**THE HUDGINS LAW FIRM**

/s/ Donald M. Hudgins
Donald M. Hudgins
State Bar No. 10149000
Michael D. Hudgins
State Bar No. 00787731
24 Greenway Plaza, Suite 2000
Houston, Texas 77046
(713) 623-2550
(713) 623-2793 - Fax
dhudgins@hudgins-law.com
mhudgins@hudgins-law.com
*Attorneys for Airgen & Equipment Repair and*
*Airgen Equipment, LLC*

**BEAN & BEAN, LLP**

/s/ Melanie D. Bean
Melanie D. Bean
State Bar No. 00790283
10019 Fallen Woods Drive
Houston, Texas 77080
(713) 463-7500
(713) 463-7779 - Fax
mdb@beanllp.com
*Attorney for Roger Simmons d/b/a*
*Rig Maintenance Services*

4

462

CAUSE NO. 2011-47304

| | |
|---|---|
| CANDIS MORA, Individually, as next friend<br>of Anthony Lorenzo Dean Mora, Emma Elisa<br>Mora, and Francisco John Mora, minor children,<br>as next friend of Lorenzo Mora, Jr., and as<br>Personal Representative of and Heir to the<br>Estate of Anthony Bryan Mora, Deceased; and<br>ELVIA OCHOA GARZA<br><br>vs.<br><br>TRINIDAD DRILLING, LLC d/b/a TRINIDAD<br>DRILLING GP, LLC; TRINIDAD DRILLING<br>LIMITED PARTNERSHIP; LAREDO<br>PETROLEUM, INC.; LAREDO PETROLEUM,<br>LLC; LAREDO PETROLEUM TEXAS, LLC;<br>LAREDO GAS SERVICES, LLC; and<br>PIONEER CONSULTING AND SERVICES, INC.<br>d/b/a LIGHTHOUSE ENERGY SOLUTIONS | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br><br><br>HARRIS COUNTY, TEXAS<br><br><br><br><br><br>165TH JUDICIAL DISTRICT |

## AGREED FINAL JUDGMENT
## AND APPROVAL OF MINOR SETTLEMENT

BE IT REMEMBERED, that on this day, came on to be heard, in the above-entitled and numbered cause wherein Candis Mora, as next friend of Anthony Lorenzo Dean Mora, Emma Elisa Mora, and Francisco John Mora, minor children ("Plaintiffs and/or Releasing Parties"), Trinidad Drilling Limited Partnership, Laredo Petroleum, Inc., Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions, Plaster & Wald Consulting Corporation, Aaron McGuire Individually and d/b/a Airgen & Equipment Repair, Airgen Equipment, LLC and Roger Simmons d/b/a Rig Maintenance Services ("Defendants and/or Released Parties"), and Cynthia Thomson Diggs, as the Guardian Ad Litem for the minor children, appeared by and through their attorneys of record and Guardian Ad Litem respectively, and announced they are ready for trial. The parties

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**APPENDIX "C"**

have waived trial by jury and submitted all matters of both fact and law to the Court without the intervention of a jury.

The Plaintiffs announced in open Court that all claims and causes of action which have been asserted or which could have been asserted against Defendants, by reason of the matters and things complained of, have been compromised and settled, subject to the approval of the Court, and requested that the Court approve and apportion the settlement of the Minors' claims.

Such agreement having been made known to the Court, and after hearing evidence presented, the Court finds all matters in controversy have been compromised and settled, the next friend and Guardian Ad Litem are fully informed with respect to the facts of liability and the damages claimed, the liability of the Defendants is uncertain, indefinite and disputed, and that with such knowledge the next friend requests the minor children's' settlement be approved. The Court finds that such settlement is fair and just to all parties, is in the best interest of the minor children, and the settlement as set forth in this Agreed Final Judgment and Approval of Minor Settlement, should be, and is, approved subject to the payments to the minor children as described below.

## PAYMENTS

In consideration of the mutual promises, covenants and warranties set forth above, Evanston Insurance Company on behalf of its insured Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions and Torus Specialty Insurance Company on behalf of its insured Plaster and Wald Consulting Corporation ("Assignors"), each agree to pay the present sum of ONE HUNDRED SIXTY SEVEN THOUSAND, TWO HUNDRED FIFTY AND NO/100 DOLLARS ($167,250), equaling

the total present sum of THREE HUNDRED THIRTY FOUR THOUSAND, FIVE HUNDRED AND 00/100 DOLLARS ($334,500.00) to BHG Structured Settlement, Inc. for the purchase of a "Qualified Funding Asset" in the form of an annuity policy or policies, the sum sufficient to provide periodic payments, as defined in Sections 104(a)(2) and 130 of the Internal Revenue Code of 1986 (the "Code"), as amended, as set forth below and included in the attached Exhibit A.

A.    Anthony Lorenzo Dean Mora will receive $1,000.00 per month beginning 11/08/2017 for 7 years, escalating at 1% compounded annually. The last monthly payment will be 10/08/2024. In addition, Anthony Lorenzo Dean Mora will also receive a guaranteed lump sum payment of $43,300.00 due on 11/08/2024.

B.    Emma Elisa Mora will receive $1,000.00 per month beginning 05/12/2022 for 7 years, escalating at 1% compounded annually. The last monthly payment will be 04/12/2029. In addition, Emma Elisa Mora will also receive a guaranteed lump sum payment of $71,000.00 due on 05/12/2029.

C.    Francisco John Mora will receive $1,200.00 per month beginning 01/19/2029 for 7 years, escalating at 1% compounded annually. The last monthly payment will be 12/19/2035. In addition, Francisco John Mora will also receive a guaranteed lump sum payment of $108,600.00 due on 01/19/2036.

## PAYMENTS NOT INCOME

Releasing Parties acknowledge that there is no factual or legal basis for the assertion or recovery of punitive damages or exemplary damages, save and except as the claim against Trinidad Drilling Limited Partnership, a claim which is denied by Trinidad Drilling Limited Partnership. All parties presently intend and contemplate that all of the payments made to the plaintiffs pursuant to this Settlement Agreement are for damages received on account of personal physical injuries or physical sickness within the meaning of Section 104(a)(2) and Section 130 of the Internal Revenue Code of

Unofficial Copy Office of Chris Daniel District Clerk

1986, as amended, and no portion of those amounts represent pre-judgment interest, post-judgment interest or punitive damages, save and except as to the settlement funds being paid by or on behalf of Trinidad Drilling Limited Partnership in consideration for the complete release of all claims alleging gross negligence, or seeking the recovery of punitive or exemplary damages against Trinidad Drilling Limited Partnership. Released parties further agree that they will not file a Form 1099 or any other form reporting the settlement amount to the Internal Revenue Service, except as required by the Internal Revenue Service for reporting payments to attorneys.

## PLAINTIFFS' RIGHT TO PAYMENTS

Plaintiffs acknowledge that the rights to receive the future Periodic Payments described herein ("Periodic Payments") cannot be accelerated, deferred, increased or decreased by Plaintiffs or any payee; nor shall Plaintiffs or any payee have the power to sell, mortgage, pledge, encumber or anticipate the periodic payments or any part thereof, by assignment or otherwise. The rights to receive periodic payments granted to the minor Plaintiffs may not be sold, transferred, hypothecated, pledged, or otherwise alienated in any manner, directly or indirectly, without the prior approval of the then-sitting Judge of this Court, as evidenced by an Order approving such transaction entered after compliance with all requirements of the Structured Settlement Protection Act, Section 141.001, Texas Civil Practice and Remedies Code, as it now exists or may hereafter be amended, or any successor to such statute. Further, prior to any sale, transfer, hypothecation, pledge or other alienation, the then-sitting Judge of this Court, must be presented with three (3) quotes from three (3) totally independent companies. A quote is defined as the amount of money that the purchaser is willing to pay the

annuitant/payee for the right of the purchaser to receive the specified future periodic payments. Any purported or attempted sale, transfer, hypothecation, pledge, or other alienation of such payments rights that has not been so approved will be a direct violation of this agreement.

## CONSENT TO QUALIFIED ASSIGNMENT

The parties hereto acknowledge and agree that Evanston Insurance Company on behalf of its insured Pioneer Consulting and Services, Inc. d/b/a Lighthouse Energy Solutions and Torus Specialty Insurance Company on behalf of its insured Plaster and Wald Consulting Corporation ("Assignors") may make a "Qualified Assignment" to BHG Structured Settlements, Inc. ("Assignee") of the obligations to make the periodic payments set forth herein. Such assignment shall comply with the provisions of Section 130(c) of the Internal Revenue Code of 1986, as amended, ("the Code") regarding "Qualified Assignments." The assignment, if made is accepted by the Plaintiffs without right of rejection. The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Released Parties and/or their Insurer (whether by judgment or agreement) immediately preceding the assignment of the Periodic payments obligation. Upon assignment, BHG Structured Settlements, Inc. or its designee shall mail future payments directly to the Plaintiffs. Plaintiffs shall be responsible for maintaining proper mailing address with BHG Structured Settlements, Inc., Structured Settlement Unit, 3024 Harney Street, Omaha, NE 68131-3580.

## RIGHT TO PURCHASE AN ANNUITY

BHG Structured Settlements, Inc. may fund the Periodic Payments by purchasing a "Qualified Funding Asset," within the meaning of Section 130(d) of the Code, in the

Unofficial Copy Office of Chris Daniel District Clerk

form of an annuity policy from Berkshire Hathaway Life Insurance Company of Nebraska. All rights of ownership and control of such annuity policy shall be vested in the Assignee, but BHG Structured Settlements, Inc. may have Berkshire Hathaway Life Insurance Company of Nebraska make payments directly to the Plaintiffs for Assignee's convenience. The annuity premium check(s) shall be delivered to Structured Annuities, Inc. at 2525 Ridgmar Boulevard, Ste. #200, Fort Worth, Texas 76116.

## RELEASE OF OBLIGATIONS

Once Assignors make such a "Qualified Assignment," Plaintiffs promise they will never, under any circumstances, look to Assignors again to make additional Periodic Payments. Plaintiffs hereby forever release Assignors from all obligations to make the Periodic Payments once Assignors make such a "Qualified Assignment." Furthermore, Plaintiffs acknowledge that only BHG Structured Settlements, Inc. shall be obligated to make the Periodic Payments once Assignors makes such a "Qualified Assignment." Assignee's obligation to make each Periodic Payment shall be discharged upon the mailing of a valid check, or its electronic equivalent to a U.S. Bank account in the amount due to the address or account so designated by the Payee.

## BENEFICIARIES

Any payments to be made after the death of the Payee(s) pursuant to the terms of this Agreement shall be made to such person or entity as shall be designated in writing by the said Payee(s), upon reaching the age of majority, to the Assignee. If no such entity is so designated by said Payee(s), such payments shall be made to the Estate of the Payee(s). No such designation, or any revocation thereof, shall be effective unless it is in writing and delivered to Assignee in a form acceptable to

Assignee, but in no event shall the request of the Payee(s) be unreasonably withheld or denied.

Plaintiffs have read this agreement, understand all terms, and have been represented by counsel and have not relied on the Defendants, insurance company, Berkshire Hathaway Life Insurance Company of Nebraska or BHG Structured Settlements, Inc. for legal or tax advice.

All Parties agree to cooperate and fully execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement, and which are not inconsistent with its terms, including securing dismissals with prejudice of all claims related to the Accident against the Released parties filed now or in the future by Releasors in any venue.

## FURTHER PAYMENTS

Further payments shall be made payable to Waltman & Grisham FBO Candis Mora, Individually and as Next of Friend of Anthony Lorenzo Dean Mora, Emma Elisha Mora, and Francisco John More, minor children, and as Personal Representative of and Heir of the Estate of Anthony Bryan Mora, Deceased, and Elvia Ochoa Garza by the Released Parties pursuant to the confidential Settlement Agreement.

## CONCLUSION

The settlement to the Minors should be apportioned as hereinafter provided and it is therefore,

ORDERED, ADJUDGED and DECREED by this Court that Anthony Lorenzo Dean Mora, Emma Elisa Mora, and Francisco John Mora Minor Plaintiffs, will receive

future periodic payments as provided by, and in accordance with, the terms and conditions of this Agreed Final Judgment.

An allocation of 92% of the gross settlement to Candis Mora, Individually, and as Next of Friend of Anthony Lorenzo Dean Mora, Emma Elisha Mora, and Francisco John More, minor children, is hereby APPROVED.

An allocation of 8% of the gross settlement to Elvia Ochoa is hereby APPROVED.

Attorneys' fees for Plaintiffs' counsel of 40% of Candis Mora's recovery are hereby APPROVED.

Attorneys' fees for Plaintiffs' counsel of 35% of Minor Plaintiffs' recovery are hereby APPROVED.

Plaintiffs' Counsel's expenses in the sum of $134,059.26 are hereby APPROVED.

Allocation to Candis Mora of 70% of the net settlement proceeds to Candis Mora and the Minor Plaintiffs is hereby APPROVED.

Allocation to the Minor Plaintiffs of 30% of the net settlement proceeds to Candis Moran d the Minor Plaintiffs is hereby APPROVED.

It is further ORDERED that the Guardian Ad Litem, Cynthia Diggs, shall receive to the total sum of FIVE THOUSAND AND 00/100 Dollars ($5,000.00) for the services as Guardian Ad Litem to be paid equally by Defendants.

The Court finds that said Judgment has been fully and finally satisfied upon funding of the settlement as stated above, and Defendants Trinidad Drilling Limited Partnership, Laredo Petroleum, Inc., Pioneer Consulting and Services, Inc. d/b/a

Services are hereby fully and finally relieved and discharged from all liability as a result of the incident made the basis of this lawsuit once such funding occurs.

It is further ORDERED, ADJUDGED and DECREED that court costs are to be paid by the party incurring same.

It is further ORDERED, ADJUDGED and DECREED that no execution shall ever issue hereon and that any relief not specifically granted herein is hereby denied.

It is further ORDERED, ADJUDGED and DECREED that all relief not specifically granted herein is hereby denied.

SIGNED this __20__ day of __April__, 2015. **APR 2 0 2015**

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

**WALTMAN & GRISHAM**

_____
Robert B. Waltman
State Bar No. 20822500
Donna Emenhiser
State Bar No. 00797835
2807 S. Texas Ave., Suite 201
Bryan, Texas 77802
(979) 694-0900
(979) 693-0840 — Fax
rob@waltman.com
donnae@waltman.com
*Attorneys for Plaintiffs*

Unofficial Copy Office of Christ Daniel District Clerk

**HARTLINE DACUS BARGER DREYER LLP**

_____

Larry D. Grayson
Texas Bar No. 08342900
8750 N. Central Expressway, Suite 1600
Dallas, Texas 75206
(214) 369-2100
(214) 369-2118 - Fax
lgrayson@hdbdlaw.com
*Attorney for Defendant*
*Trinidad Drilling Limited Partnership*


**HEARD & MEDACK, P.C.**

_____

David W. Medack
State Bar No. 13892950
James P. Davis
State Bar No. 24028275
9494 Southwest Freeway. Suite 700
Houston, Texas 77074
(713) 772-6400
(713) 772-6495 – Fax
dmedack@heardmedackpc.com
jdavis@heardmedackpc.com
*Attorneys for Defendant*
*Laredo Petroleum, Inc.*

**PHELPS DUNBAR LLP**

_David Lee Crawford_

David Lee Crawford
State Bar No. 05020100
700 Louisiana, Suite 2600
Houston, TX 77002
(713) 626-1386
(713) 626-1388 – Fax
david.crawford@phelps.com
*Attorney for Defendant*
*Pioneer Consulting and Services*
*d/b/a Lighthouse Energy Solutions*


**TUCKER TAUNTON SNYDER & SLADE, PC**

_Norman E. Snyder_

Norman E. Snyder, Jr.
State Bar No. 18818500
10370 Richmond Avenue, Suite 1400
Houston, Texas 77042
(713) 961-5800
(713) 993-2308 – Fax
nsnyder@tsslawfirm.com
*Attorneys for Defendant*
*Plaster & Wald Consulting Corp.*


**THE HUDGINS LAW FIRM**

Donald M. Hudgins
Texas Bar No. 10149000
Michael Hudgins
24 Greenway Plaza, Suite 2000
Houston, Texas 77046
(713) 623-2550 – Telephone
(713) 623-2793 - Facsimile
dhudgins@hudgins-law.com
mhudgins@hudgins-law.com
*Attorneys for Airgen & Equipment Repair and*
*Airgen Equipment, LLC*

**BEAN & BEAN, LLP**

*Melanie D. Bean* (signature)

Melanie D. Bean
Texas Bar No. 00790283
~~950 Echo Lane, Suite 120~~ /0019 Fallen Woods Drive
Houston, Texas ~~77024~~ 77080
(713) 463-7500 - Telephone
(713) 463-7779 – Fax
mdb@beanllp.com
*Attorney for Roger Simmons d/b/a*
*Rig Maintenance Services*


**HOLMES, DIGGS & EAMES, PLLC**

Cynthia Thomson Diggs
Texas Bar No. 18554600
5300 Memorial Drive, Suite 900
Houston, Texas 77007
(713) 802-1777 – Telephone
(713) 802-1779 – Facsimile
cdiggs@holmesdiggs.com
*Guardian ad Litem for Anthony Lorenzo Dean Mora*
*Emma Elisha Mora, and Francisco John Mora*

Unofficial Copy Office of Chris Daniel District Clerk

**BEAN & BEAN, LLP**

_____
Melanie D. Bean
Texas Bar No. 00790283
950 Echo Lane, Suite 120
Houston, Texas 77024
(713) 463-7500 - Telephone
(713) 463-7779 – Fax
mdb@beanllp.com
_Attorney for Roger Simmons d/b/a_
_Rig Maintenance Services_

**HOLMES, DIGGS & EAMES, PLLC**

_____
Cynthia Thomson Diggs
Texas Bar No. 18554600
5300 Memorial Drive, Suite 900
Houston, Texas 77007
(713) 802-1777 – Telephone
(713) 802-1779 – Facsimile
cdiggs@holmesdiggs.com
_Guardian ad Litem for Anthony Lorenzo Dean Mora_
_Emma Elisha Mora, and Francisco John Mora_

# STRUCTURED SETTLEMENT PROPOSAL

### Case Name :ANTHONY MORA - - FINAL

Today's Date :02/23/2015

|  | GUARANTEED BENEFITS | EXPECTED BENEFITS |
|---|---|---|

**BENEFITS FOR: ANTHONY MORA**
**MALE, AGE 15, DATE OF BIRTH 11/08/1999**
**NORMAL LIFE EXPECTANCY 70**

|  | GUARANTEED BENEFITS | EXPECTED BENEFITS |
|---|---|---|
| Beginning At Age 18 (11/08/2017), $1,000.00 payable monthly for 7 years certain only, compounding annually at 1.000%. Last guaranteed payment is due 10/08/2024. | 86,562.00 | 86,562.00 |
| At Age 25 (11/08/2024), a lump sum of $43,300.00. | 43,300.00 | 43,300.00 |
| Subtotal | 129,862.00 | 129,862.00 |
| Total Proposal | 129,862.00 | 129,862.00 |

_ALL PAYMENTS ARE INCOME TAX-FREE UNDER IRC SECTION 104(A)(2)_

**BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA**
**RATED "A++" BY A.M. BEST COMPANY**
**INCOME TAX-FREE IRR = 2.12%**
**TAXABLE EQUIVALENT (20% BRACKET) = 2.65%**

**TOTAL COST = $111,500.00**

- Page 1 -

Exhibit A

Unofficial Copy Office of Chris Daniel District Clerk

STRUCTURED ANNUITIES INC

817 763 8100

WATS 800 242 8882

# STRUCTURED SETTLEMENT PROPOSAL

### Case Name :EMMA MORA - - FINAL

**Today's Date :**02/23/2015

| | GUARANTEED BENEFITS | EXPECTED BENEFITS |
|---|---|---|

**BENEFITS FOR: EMMA MORA**
**FEMALE, AGE 11, DATE OF BIRTH 05/12/2004**
**NORMAL LIFE EXPECTANCY 80**

| | GUARANTEED BENEFITS | EXPECTED BENEFITS |
|---|---|---|
| Beginning At Age 18 (05/12/2022), $1,000.00 payable monthly for 7 years certain only, compounding annually at 1.000%. Last guaranteed payment is due 04/12/2029. | 86,562.00 | 86,562.00 |
| At Age 25 (05/12/2029), a lump sum of $71,000.00. | 71,000.00 | 71,000.00 |
| Subtotal | 157,562.00 | 157,562.00 |
| Total Proposal | 157,562.00 | 157,562.00 |

_**ALL PAYMENTS ARE INCOME TAX-FREE UNDER IRC SECTION 104(A)(2)**_

**BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA**
**RATED "A++" BY A.M. BEST COMPANY**
**INCOME TAX-FREE IRR = 2.89%**
**TAXABLE EQUIVALENT (20% BRACKET) = 3.61%**

**TOTAL COST = $111,500.00**

- Page 1 -

STRUCTURED ANNUITIES INC

817 763 8100

WATS 800 242 8882

Unofficial Copy Office of Chris Daniel District Clerk

# STRUCTURED SETTLEMENT PROPOSAL

## Case Name :FRANCISCO MORA - - FINAL

Today's Date :02/23/2015

|  | GUARANTEED BENEFITS | EXPECTED BENEFITS |
|---|---|---|

**BENEFITS FOR: FRANCISCO MORA**
**MALE, AGE 4, DATE OF BIRTH 01/19/2011**
**NORMAL LIFE EXPECTANCY 82**

| | GUARANTEED BENEFITS | EXPECTED BENEFITS |
|---|---|---|
| Beginning At Age 18 (01/19/2029), $1,200.00 payable monthly for 7 years certain only, compounding annually at 1.000%. Last guaranteed payment is due 12/19/2035. | 103,875.00 | 103,875.00 |
| At Age 25 (01/19/2036), a lump sum of $108,600.00. | 108,600.00 | 108,600.00 |
| Subtotal | 212,475.00 | 212,475.00 |
| Total Proposal | 212,475.00 | 212,475.00 |

_ALL PAYMENTS ARE INCOME TAX-FREE UNDER IRC SECTION 104(A)(2)_

**BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA**
**RATED "A++" BY A.M. BEST COMPANY**
**INCOME TAX-FREE IRR = 3.44%**
**TAXABLE EQUIVALENT (20% BRACKET) = 4.30%**

**TOTAL COST = $111,500.00**

LABOR CODE
CHAPTER 417. THIRD-PARTY LIABILITY

Sec. 417.001. THIRD-PARTY LIABILITY. (a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or the legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code, attributable to the employer. If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall:

(1) reimburse itself and pay the costs from the amount recovered; and
(2) pay the remainder of the amount recovered to the injured employee or the legal beneficiary.

(c) If a claimant receives benefits from the subsequent injury fund, the commission is:
(1) considered to be the insurance carrier under this section for purposes of those benefits;
(2) subrogated to the rights of the claimant; and
(3) entitled to reimbursement in the same manner as the insurance carrier.

**APPENDIX "D"**

(d) The commission shall remit money recovered under this section to the comptroller for deposit to the credit of the subsequent injury fund.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 1423, Sec. 12.13, eff. Sept. 1, 1997;  Acts 2003, 78th Leg., ch. 204, Sec. 4.09, eff. Sept. 1, 2003.

Sec. 417.002.  RECOVERY IN THIRD-PARTY ACTION.  (a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

(b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

(c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits.  If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 417.003.  ATTORNEY'S FEE FOR REPRESENTATION OF INSURANCE CARRIER'S INTEREST.  (a)  An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier.  In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

(1)  a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery;  and
(2)  a proportionate share of expenses.

(b) An attorney who represents the claimant and is also to represent the subrogated insurance carrier shall make a full written disclosure to the claimant before

employment as an attorney by the insurance carrier.  The claimant must acknowledge the disclosure and consent to the representation.  A signed copy of the disclosure shall be furnished to all concerned parties and made a part of the commission file.  A copy of the disclosure with the claimant's consent shall be filed with the claimant's pleading before a judgment is entered and approved by the court.  The claimant's attorney may not receive a fee under this section to which the attorney is otherwise entitled under an agreement with the insurance carrier unless the attorney complies with the requirements of this subsection.

(c)  If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery.  In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service.  The total attorney's fees may not exceed one-third of the insurance carrier's recovery.

(d)  For purposes of determining the amount of an attorney's fee under this section, only the amount recovered for benefits, including medical benefits, that have been paid by the insurance carrier may be considered. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 417.004.  EMPLOYER LIABILITY TO THIRD PARTY.  In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

program adequate to prevent soil and subsoil wash out. It is recognized that Operator may have superior knowledge of the location and access routes to the location, and must advise Contractor of any subsurface conditions, or obstructions (including, but not limited to, mines, caverns, sink holes, streams, pipelines, power lines and communication lines which Contractor may encounter) which Contractor might encounter while en route to the location or during operations hereunder. *In the event subsurface conditions cause a cratering or shifting of the location surface, or if seabed conditions prove unsatisfactory to properly support the rig during marine operations hereunder, and loss or damage to the rig or its associated equipment results therefrom, Operator shall, without regard to other provisions of this Contract, including Subparagraph 14.1 hereof, reimburse Contractor for all such loss or damage including removal of debris and payment of Force Majeure Rate during repair and/or demobilization if applicable. Operator's maximum liability under this Paragraph 10 shall be limited to and shall not exceed $1,000,000.*

## 11. EQUIPMENT CAPACITY

Operations shall not be attempted under any conditions which exceed the capacity of the equipment specified in Subparagraph 3.1 to be used hereunder or where canal or water depths are in excess of _____N/A_____ feet. Without prejudice to the provisions of Paragraph 14 hereunder, Contractor shall have the right to make the final decision as to when an operation or attempted operation would exceed the capacity of specified equipment.

## 12. TERMINATION OF LOCATION LIABILITY:

*When Contractor has concluded operations at the well location and left this location in accordance with this contract, Operator shall thereafter be liable for damage to property, personal injury or death of any person which occurs as a result of conditions of the location and Contractor shall be relieved of such liability; provided, however, if Contractor shall subsequently reenter upon the location for any reason, including removal of the rig, any term of the Contract relating to such reentry activity shall become applicable during such period..*

## 13. INSURANCE

During the life of this Contract, Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and in the amount set forth in Exhibit "A", insuring the liabilities specifically assumed by Contractor in Paragraph 14 of this Contract. Contractor shall procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be canceled or materially changed without thirty (30) days prior written notice to Operator. For liabilities assumed hereunder by Contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes and shall maintain, at Operator's expense, or shall self insure, insurance coverage as set forth in Exhibit "A" of the same kind and in the same amount as is required of Contractor, insuring the liabilities specifically assumed by Operator in Paragraph 14 of this Contract. Operator shall procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be canceled or materially changed without thirty (30) days prior written notice to Contractor. Operator and Contractor shall cause their respective underwriters to name the Contractor's Group and the Operator's Group, as appropriate, as an additional insured but only to the extent of the risks, obligations and liabilities assumed by operation of this Contract, including, but not limited to, the drilling rig.

## 14. RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK:

*14.1 Contractor's Surface Equipment: Contractor shall assume liability at all times for damage to or destruction of Contractor's surface equipment, regardless of when or how such damage or destruction occurs, and Contractor shall release Operator of any liability for any such loss, except loss or damage under the provisions of Paragraph 10 or Subparagraph 14.3 up to $1,000,000.00 per incident.*

*14.2 Contractor's In-Hole Equipment: Operator shall assume liability at all times for damage to or destruction of Contractor's in-hole equipment, including, but not limited to, drill pipe, drill collars, and tool joints, and Operator shall reimburse Contractor for the value of any such loss or damage; the value to be determined by agreement between Contractor and Operator as current repair costs or ____100____ percent of current market / replacement cost of in like kind equipment delivered to the well site.*

*14.3 Contractor's Equipment - Environmental Loss or Damage: Notwithstanding the provisions of Subparagraph 14.1 above, Operator shall assume liability at all times for damage to or destruction of Contractor's equipment resulting from the presence of $H_2S$, $CO_2$ or other corrosive elements that enter the drilling fluids from subsurface formations or the use of corrosive, destructive or abrasive additives in the drilling fluids.*

*14.4 Operator's Equipment: Operator shall assume liability at all times for damage to or destruction of Operator's or its co-venturers', co-lessees' or joint owners' equipment, including, but not limited to, casing, tubing, well head equipment, and platform if applicable, regardless of when or how such damage or destruction occurs, and Operator shall release Contractor of any liability for any such loss or damage; unless such loss is due to Contractor's gross negligence. Contractor's maximum liability under this Paragraph 14.4 shall be limited to and shall not exceed $1,000,000.*

*14.5 The Hole: In the event the hole should be lost or damaged, Operator shall be solely responsible for such damage to or loss of the hole, including the casing therein. Operator shall release Contractor and its suppliers, contractors and subcontractors of any tier of any liability for damage to or loss of the hole, and shall protect, defend and indemnify Contractor and its suppliers, contractors and subcontractors of any tier from and against any and all claims, liability, and expense relating to such damage to or loss of the hole; unless such loss is due to Contractor's gross negligence. Contractor's maximum liability under this Paragraph 14.5 shall be limited to and shall not exceed $1,000,000*

*14.6 Underground Damage: Operator shall release Contractor and its suppliers, contractors and subcontractors of any tier of any liability for, and shall protect, defend and indemnify Contractor and its suppliers, contractors and subcontractors of any tier from and against any and all claims, liability, and expense resulting from operations under this Contract on account of injury to, destruction of, or loss or impairment of any property right in or to oil, gas, or other mineral substance or water, if at the time of the act or omission causing such injury, destruction, loss, or impairment, said substance had not been reduced to physical possession above the surface of the earth, and for any loss or damage to any formation, strata, or reservoir beneath the surface of the earth.*

*14.7 Inspection of Materials Furnished by Operator: Contractor agrees to visually inspect all materials furnished by Operator before using same and to notify Operator of any apparent defects therein. Contractor shall not be liable for any loss or damage resulting from the use of materials furnished by Operator, and Operator shall release Contractor from , and shall protect, defend and indemnify Contractor from and against, any such liability.*

*~~14.8 Contractor's Indemnification of Operator: Contractor shall release Operator of any liability for, and shall protect, defend and indemnify Operator from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors of any tier (inclusive of any agent or consultant engaged by Contractor) or their employees, or Contractor's invitees, on account of bodily injury, death or damage to property. Contractor's indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by Operator pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.~~* SEE ATTACHED OPERATOR'S ADDENDUM

*(U.S. Daywork Contract - Page 4)*
Copyright © 2003 International Association of Drilling Contractors

Form provided by Forms On-A-Disk
(214) 340-9429 · FormsOnADisk.com

TD00004



APPENDIX "E"

~~14.9 Operator's Indemnification of Contractor: Operator shall release Contractor of any liability for, and shall protect, defend and indemnify Contractor from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors of any tier (inclusive of any agent, consultant or subcontractor engaged by Operator) or their employees, or Operator's invitees, other than those parties identified in Subparagraph 14.8 on account of bodily injury, death or damage to property. Operator's indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by Contractor pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.9 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.~~ SEE ATTACHED OPERATOR'S ADDENDUM

*14.10 Liability for Wild Well:* Operator shall be liable for the cost of regaining control of any wild well, as well as for cost of removal of any debris and cost of property remediation and restoration, and Operator shall release, protect, defend and indemnify Contractor and its suppliers, contractors and subcontractors of any tier from and against any liability for such cost.

*14.11 Pollution or Contamination:* Notwithstanding anything to the contrary contained herein, except the provisions of Paragraphs 10 and 12, it is understood and agreed by and between Contractor and Operator that the responsibility for pollution or contamination shall be as follows:

*(a)* Contractor shall assume all responsibility for, including control and removal of, and shall protect, defend and indemnify Operator from and against all claims, demands and causes of action of every kind and character arising from pollution or contamination, which originates above the surface of the land or water from spills of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, bilge and garbage, except unavoidable pollution from reserve pits, ~~wholly~~ in Contractor's possession or control and directly associated with Contractor's equipment and facilities.

*(b)* Operator shall assume all responsibility for, including control and removal of, and shall protect, defend and indemnify Contractor and its suppliers, contractors and subcontractors of any tier from and against all claims, demands, and causes of action of every kind and character arising directly or indirectly from all other pollution or contamination which may occur during the conduct of operations hereunder, including, but not limited to, that which may result from fire, blowout, cratering, seepage or any other uncontrolled flow of oil, gas, water or other substance, as well as the use or disposition of all drilling fluids, including, but not limited to, oil emulsion, oil base or chemically treated drilling fluids, contaminated cuttings or cavings, lost circulation and fish recovery materials and fluids. Operator shall release Contractor and its suppliers, contractors and subcontractors of any tier of any liability for the foregoing.

*(c)* In the event a third party commits an act or omission which results in pollution or contamination for which either Contractor or Operator, for whom such party is performing work, is held to be legally liable, the responsibility therefor shall be considered, as between Contractor and Operator, to be the same as if the party for whom the work was performed had performed the same and all of the obligations respecting protection, defense, indemnity and limitation of responsibility and liability, as set forth in (a) and (b) above, shall be specifically applied.

*14.12 Consequential Damages:* Subject to and without affecting the provisions of this Contract regarding the payment rights and obligations of the parties or the risk of loss, release and indemnity rights and obligations of the parties, each party shall at all times be responsible for and hold harmless and indemnify the other party from and against its own special, indirect or consequential damages, and the parties agree that special, indirect or consequential damages shall be deemed to include, without limitation, the following: loss of profit or revenue; costs and expenses resulting from business interruptions; loss of or delay in production; loss of or damage to the leasehold; loss of or delay in drilling or operating rights; cost of or loss of use of property, equipment, materials and services, including without limitation those provided by contractors or subcontractors of every tier or by third parties. Operator shall at all times be responsible for and hold harmless and indemnify Contractor and its suppliers, contractors and subcontractors of any tier from and against all claims, demands and causes of action of every kind and character in connection with such special, indirect or consequential damages suffered by Operator's co-owners, co-venturers, co-lessees, farmors, farmees, partners and joint owners. Should Contractor wrongfully refuse to perform under the Contract or wrongfully terminate the Contract, nothing herein contained shall limit or restrict Operator's right to recover direct damages of any increased costs suffered by Operator in contracting a replacement rig for the term of the Contract remaining at the time of Contractor's wrongful refusal to perform or termination of the Contract

*14.13 Indemnity Obligation:* Except as otherwise expressly limited herein, it is the intent of parties hereto that all releases, indemnity obligations, and assumptions of liability by Contractor and Operator under Subparagraphs 14.1 through 14.12 hereof, shall be without limit and without regard to the cause or causes thereof (including preexisting conditions), strict liability, regulatory or statutory liability, breach of warranty (express or implied), any theory of tort, breach of contract or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive. Except as otherwise expressly limited herein, all releases, indemnity obligations, and assumptions of liability by Contractor and Operator under Subparagraphs 14.1 through 14.12 hereof shall include the duty to defend (and the duty to reimburse defense costs in the event the duty to defend is not honored) and shall extend to any claims, liabilities, and causes of action arising out of ingress, egress, loading, and unloading of cargo and personnel. The indemnities, releases, and assumptions of liability extended by the parties hereto under the provisions of Paragraph 14 shall in the case of Contractor, inure to the benefit of Contractor, its parent, holding and affiliated companies and their respective officers, directors, employees, agents, servants, and its subcontractors ("Contractor's Group"), and in the case of Operator, shall inure to the benefit of Operator and its parent, subsidiary, related and affiliated corporation(s), partnership(s), and limited liability companies, and its and their non-operators, co-owners, co-lessees, partners, co-partners, co-venturers, joint venturers, and other contractors and subcontractors (with the exception of Contractor and its subcontractors) and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, and subrogees of all of the foregoing ("Operator's Group"). The parties agree that each party will obtain liability insurance, or provide self-insurance (each with minimum limits not less than the amounts set forth in Exhibit A) for the benefit of and with no right of subrogation against the other party or such party's Group as defined in this Subparagraph 14.13, and that such insurance shall support the parties' mutual indemnity obligations under Subparagraphs 14.1 through 14.12 hereof. Each party and their respective Group as defined in this Subparagraph 14.13 shall be named as additional insured (on a form no less broad than ISO form CG 20 10 AI) on the other parties' liability insurance and excess policy as each are described in Exhibit A, and the indemnifying parties' insurance shall be primary to the extent of the releases, indemnity obligations, and assumptions of liability by the indemnifying party under this Contact. Except as expressly provided in this Subparagraph 14.13, the terms and provisions of Subparagraphs 14.1 through 14.12 shall have no application to claims or causes of action asserted against Operator or Contractor by reason of any agreement of indemnity with a person or entity not a party hereto.

**15. AUDIT**

If any payment provided for hereunder is made on the basis of Contractor's costs, Operator shall have the right to audit Contractor's books and records relating to such costs. Contractor agrees to maintain such books and records for a period of three (3) years from the date such costs were incurred and to make such books and records readily available to Operator at any reasonable time or times within the period.

**16. NO WAIVER EXCEPT IN WRITING**

Form provided by Forms On-A-Disk
(214) 340-9429 · FormsOnADisk.com

TD00005



*** T D 0 0 0 0 0 5 * * *

*Revised April, 2003*

## OPERATOR'S ADDENDUM

For the IADC Daywork Drilling Contract – U.S. (Revised April, 2003) dated this _____ day of _____August_____, 2010 between <u>Laredo Petroleum, Inc.</u> and _<u>Trinidad Drilling LP</u>___ on the <u>TBD</u> well located in <u>Glasscock County</u>, State of <u>Texas</u>

Continuation of Paragraph 5.2 of the Contract:

5.2      Notwithstanding anything to the contrary contained herein, payment of any such bills shall not prejudice the right of Operator         to protest or question the correctness thereof.

Operator, upon notice in writing to Contractor, shall have the right to audit Contractor's accounts and records relating to the Contract for any calendar year within the twenty-four (24) month period following the end of such calendar year provided, however, the making of an audit shall not extend the time for taking of written exception to and the adjustments of accounts as provided above. The audits shall not be conducted more than once each year without the prior approval of Contractor, and shall be made at the expense of the Operator. The Contractor shall reply in writing to an audit report within 180 days after receipt of such report.

Replacement Paragraphs 14.8 and 14.9 of the Contract

The following are hereby substituted (and are replacements) for Paragraphs 14.8 and 14.9 of the Contract:

14.8     **Contractor's Indemnification of Operator:**  Contractor shall release Operator and Operator's Parties from of any liability for, and shall protect, defend and indemnify Operator and Operator's Parties, its officers, directors, employees and joint owners from and against all claims demands and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees  or Contractor's subcontractors or their employees, or Contractor's invitees (collectively the "*Contractor's Parties*"), on account of bodily injury, death or damage to property.  Contractor shall further release Operator and Operator's Parties of any liability for, and protect, defend and indemnify Operator, its officers, directors, employees and joint owners from and against all claims, demands and causes of action of every kind and character, without limit, arising in connection herewith in favor of any third party or parties (excluding "Operator's Parties"), on account of bodily injury , death or damage to property caused by the negligent or willful acts of Contractor's Parties.  Likewise, Contractor shall be responsible for and shall protect , defend and indemnify Operators, it officers,  directors, employees and joint owners from and against any fines or sanctions imposed by any governmental agency or authority arising from any unlawful act or acts committed by Contractor's Parties while in the course of performance of this Contract.  Contractor's indemnity under this paragraph shall be without regard to and without any right to contribution from any insurance maintained by operator pursuant to Paragraph 13.  If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Paragraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under law.  The provisions of this paragraph shall be subject to those contained elsewhere in this contract (including Paragraph 14.11):  In case of conflict, the other provisions of this contract shall govern.

14.9     **Operator's Indemnification of Contractor:**  Operator shall release Contractor and Contractor's Parties of any liability for, and shall protect, defend and  indemnify Contractor and Contractor's Parties, its officers, directors, employees and joint owners from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's  employees or Operator's contractors, subcontractors or   their employees, or Operator's invitees (collectively "*Operator's Parties*") other than those parties identified in Paragraph 14.8 on account of bodily injury, death or damage to property.  Operator shall further release Contractor and Contractor's Parties of any liability for, and protect, defend and indemnify Contractor, its officers, directors, employees and joint owners from and against all claims, demands, and causes of action of every kind and character, without limit, arising in connection herewith in favor of any third party or parties (excluding "Contractor's Parties") on account of bodily injury, death or damage to property caused by the negligent or willful acts of Operator's Parties.  Likewise, Operator shall be responsible for and shall protect, defend and indemnify Contractor, its officers, directors, employees, and joint owners from and against any fines or sanctions imposed by any governmental agency or authority arising from any unlawful acts or acts committed by Operator's parties while in the course of performance of this contract.  Operator's indemnity under this paragraph shall be without regard to and without any right to contribution from any insurance maintained by Contractor pursuant to Paragraph 13.  If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Paragraph 14.9 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part of whole) exceed the maximum limits permitted under applicable law.  It is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.  The provisions of this paragraph shall be subject to those contained elsewhere in this contract (including Paragraph 14.11):  In case of conflict, the other provisions of this contract shall govern.

Continuation of Paragraph 14.13 of the Contract (and the following shall be added to the end of Paragraph 14.13):

14.13    Each party shall notify the other party immediately of any claim, demand, or suit that may be presented to or served upon it by any party arising out of or as a result of work performed pursuant hereto, affording such other party full opportunity to assume the defense of such claim, demand, or suit and to protect itself under the obligations of this Section.  Each party covenants and agrees to support this indemnity agreement by available liability insurance coverage as set forth in Paragraph 13.  In the event that this Contract is subject to the indemnity limitations of any applicable State law, and so long as that law is in force, then it is agreed that the above obligations to indemnify are limited to the extent allowed by law.  Additionally, the parties agree that:

(a)      In the event (and to the extent) this Contract is subject to the Louisiana Oilfield Indemnity Act (including Act 427 of the 1982 Louisiana Legislature), then the indemnities in Paragraphs 14.8 and 14.9 relating to personal injury, bodily injury, illness or death shall not be applicable, and the indemnities in the immediately following sentence shall, instead, apply.  In lieu thereof, each party agrees to defend, indemnify, save and hold the other party harmless from and against all claims and causes of action to the extent such arise out of the indemnifying party's negligence, gross negligence, strict liability or breach of contract.

(b)      In the event that this Agreement  is subject  to the indemnity limitations of Chapter  127  of the Texas Civil Practices and Remedies Code, and so long as such limitation are in force, then it is agreed that the above Obligations to indemnify are limited to the extent allowed by law, and each party covenants and agrees to support this indemnity agreement by equal amounts of liability insurance coverage, with limits of insurance required of each  party equal  to those specifically  set forth in Paragraph 13 above. In the event that this contract is subject to any other applicable state indemnity limitation, it is agreed  that the above obligations to indemnify are limited to the extent allowed by law.

(c)      In all cases where Contractor's employees (including Contractor's direct, borrowed, special and statutory employees) are covered by the Louisiana Worker's Compensation Act, La.R.S. 23:1021 et seq., Operator and Contractor agree that the work performed by Contractor and its employees pursuant to this agreement are an integral part of and are essential to the ability of Operator to generate Operator's goods, products and services. Furthermore, Operator and Contractor agree that Operator is a statutory employer of Contractor's employees for purposes of La.R.S. 23:1061(A)(3). Notwithstanding the Operator's status as a statutory employer or special employer (as defined in La.R.S. 23:1031(C)) of Contractor's employees, Contractor shall remain

Form provided by Forms On-A-Disk
(214) 340-9429 · FormsOnADisk.com

TD00013

*Revised April, 2003*

primarily responsible for the payment of the Louisiana Worker's Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Operator.

For Contractor: _____

**Jack Pepper**
VP Operations – Northern Division

For Operator: _____

*(U.S. Daywork Contract - Page 14)*
Copyright © 2003 International Association of Drilling Contractors

Form provided by Forms On-A-Disk
(214) 340-9429 · FormsOnADisk.com

TD00014